(No. 35637.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* WILLIAM R. FRIEDRICH, Plaintiff in Error.

*Opinion filed September 29, 1960.*

CHARLES A. BELLOWS, and DANIEL C. AHERN, both of Chicago, for plaintiff in error.

GRENVILLE BEARDSLEY, Attorney General, of Springfield, and BENJAMIN S. ADAMOWSKI, State's Attorney, of Chicago, (FRED G. LEACH, Assistant Attorney General, and FRANCIS X. RILEY, Assistant State's Attorney, of counsel,) for the People.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

Defendant William Friedrich, together with Helen Compell, James Compell, Charles Fleck, James Lucania,

James Montana and Theodore Zahler, was indicted by the grand jury of the criminal court of Cook County for the crime of conspiracy to fraudulently obtain the assets of the estate of one Frank Rozanski. Helen Compell and James Compell testified for the State and all of the other defendants obtained a severance from each other. Upon Friedrich's separate trial, the jury found him guilty and fixed his punishment at a fine of $2000. A writ of error has been issued to review the judgment of conviction. Several errors are assigned dealing with the sufficiency of the evidence, errors in the introduction of certain evidence, and procedural errors at the trial. In addition to these errors, Friedrich contends that he was deprived of his constitutional right to counsel of his own choice.

A detailed statement of the evidence is not necessary, but a general statement of the nature of the alleged conspiracy is necessary for a proper understanding of issues involved here. Frank Rozanski, whose estate the defendants allegedly conspired to obtain, died in 1954, leaving an estate of approximately $70,000. He had come to this country from Poland in 1910, leaving a wife and two children in Poland. Shortly after his arrival in this country, he met Valeria Ostrowski, who had a daughter, Helen, by a former marriage. Rozanski and Mrs. Ostrowski commenced living together, first in New York and then in Chicago. He never married Mrs. Ostrowski and never adopted Helen. Subsequently, the daughter married James Compell.

Defendant Friedrich, an attorney who practiced in Naperville, in Du Page County, first met Rozanski in about 1940. He knew of Rozanski's wife in Poland, for he obtained a divorce for Rozanski, divorcing him from this wife. He also knew that Rozanski had two children in Poland, but he was uncertain as to when Rozanski had told him of these children. He represented Rozanski in numerous legal matters, including several sales of real estate. In cases where the real estate was in Du Page

County, Friedrich described Rozanski in the deeds as "divorced and not remarried," and where the real estate was in Cook County, Rozanski and Valeria were described as husband and wife. One of the real-estate transactions was a sale of Cook County property by Rozanski to Helen and James Compell. Rozanski told Friedrich at that time that he did not want Helen to know anything about the divorce proceeding. Friedrich then asked Rozanski about the two children in Poland, and Rozanski told him to forget about it, that the children were dead anyway.

The defendant Fleck was public administrator of Cook County, Zahler was an attorney employed in Fleck's office, and the defendant Montana was an assistant probate judge of Cook County. Briefly, it was the theory of the State that the defendants conspired to obtain Rozanski's estate by falsely claiming that Helen was Rozanski's actual daughter. It was claimed that the proceeds of the estate were to be split between the alleged conspirators. It was the State's theory that defendant Friedrich was involved in the conspiracy by reason of the fact that he knew from having represented Rozanski during his lifetime that Rozanski had children living in Poland, but that said defendant gave false testimony in a proof of heirship proceeding in Rozanski's estate, in which he testified that Rozanski always held Helen out as his actual daughter, and that Rozanski had never told him that he actually had any children born to him. It was the State's contention that by reason of this testimony, Friedrich's claim for legal services in the amount of $3,410 was allowed in the probate court, although the same was actually barred by the Statute of Limitations and was incapable of proof by reason of the dead man's statute. It was also claimed that Friedrich received several hundred dollars from Helen Compell for his alleged false testimony.

With this brief summary we shall proceed to a consideration of the errors assigned, and shall first consider the contention that defendant Friedrich was deprived of

the right to counsel of his own choice. Friedrich is an attorney at law whose practice in Du Page County was largely limited to civil matters. He retained the services of Charles A. Bellows, a Chicago attorney who specialized in the trial of criminal cases. The defendant Theodore Zahler had likewise retained the services of Bellows in the conspiracy case. The first pertinent proceeding pertaining to Friedrich's right to counsel of his own choice occurred on May 28, 1957, shortly after the return of the indictment. On that date, the State moved for a continuance upon the grounds that James and Helen Compell were still in Florida, and that extradition proceedings were pending against them. At that time James Lucania and James Montana, who were each represented by separate counsel, demanded immediate trial. Bellows, on behalf of Friedrich and Zahler, likewise demanded an immediate trial and objected to the continuance. The motion for immediate trial was denied and the cause was continued until July 17. On June 13, the defendant Montana moved for a change of venue. At that time, Bellows stated that he represented both Zahler and Friedrich and that Zahler was also filing a motion for a change of venue, but that Friedrich was not. Bellows then stated that he represented the two defendants and that he intended to ask for a continuance, stating that he had reason to believe that no one would demand trial from that point on. Over the objection of the assistant State's Attorney the court granted a continuance so that all of the defendants would have an opportunity to file any further motions.

Thereafter, motions for a severance were filed on behalf of Fleck, Lucania and Montana. The court granted these motions and each of these defendants was granted a separate trial. Bellows then filed a motion on behalf of the defendant Zahler, requesting a severance. In that motion, Zahler stated that Friedrich had appeared before the grand jury and testified concerning the activities relating to the

charges in the indictment; that Friedrich had made statements out of the presence of Zahler to the State's Attorney and that these statements were conflicting and antagonistic to Zahler, and would deprive Zahler of a fair and impartial trial. The petition further stated that Friedrich had told the State's Attorney that he had had numerous conversations with Helen and James Compell, out of the sight and presence of Zahler, which conversations purported to contain implications of Zahler's connection with the alleged conspiracy. It was further stated that Friedrich had signed as a witness to a petition for naturalization filed by Frank Rozanski, whose estate was the subject matter of the indictment, and that in this petition for nauralization, Rozanski had stated that he was married to one Stanislava Rozanski in Poland and that two children were born of that marriage. The petition went on to state that Friedrich had been the attorney for Rozanski in a divorce proceeding by which Rozanski obtained a divorce from his wife in Poland and that at that time Friedrich omitted in the complaint for a divorce any mention of the children previously referred to. It was further alleged in the petition that Friedrich had testified before the probate court that Rozanski never told him that he actually had any children born to him. It was alleged in the petition that by reason of these various statements and acts the defenses of Friedrich and Zahler would be antagonistic to each other, and that if Zahler were to be tried jointly with Friedrich, Zahler's right to a fair and impartial trial would be jeopardized and that the joint trial would produce the spectacle of Zahler and Friedrich attempting to destroy one another.

At the hearing on the motion, Bellows stated that he was in a peculiar position and stated that if he did not obtain a severance, it would make it difficult or impossible to represent both men. He pointed out to the court that the allegations made by Zahler in his petition for a severance, insofar as they pertained to Friedrich, were substantially

the same statements made by the defendant Fleck in his motion for a severance, and since the court had granted Fleck's motion, he presumed that Zahler's motion would likewise be granted. The court then stated that he was concerned about the fact that Bellows was an attorney representing both parties and had continued to represent both, because if there was such a conflict of interests and antagonism between said defendants, as stated in Zahler's petition, the court could not see how Bellows could possibly continue as the attorney for both of them. He stated to Bellows that he could not believe that he could be serious about the antagonism, because in good conscience he could not stay in the case for both defendants and file such a petition. Bellows then stated that he had never undertaken to represent two parties where there was a conflicting interest and that while there was a conflict if the two defendants were tried together, there was no reason why he could not represent both of them on separate trials. The court replied that Bellows was in a difficult position. Bellows answered that he realized the difficulty of his position and he assured the court that he would not jeopordize the interest of any one because of conflicting interests. After some further discussion, the following colloquy occurred:

"Mr. Bellows: Maybe, perhaps, your Honor and I don't understand each other. I have always been under the impression two men may have antagonistic interests, insofar as the trial is concerned. If they are separated, your Honor, and they are tried separately and apart, I feel, your Honor, that a lawyer could defend each one of them separately and apart if they are not both tried together. I know of no reason why a lawyer couldn't do that. But if your Honor feels that it is a reason for not granting a severance, I will gladly withdraw from Mr. Friedrich's case.

"The Court: I know nothing except what I read.

"Mr. Bellows: Your Honor, if you feel that way, I will withdraw from Mr. Friedrich's case.

"The Court: I don't want you to do anything like that. It is up to you, but if you were going to do it, it should have been done before the petition was presented. If you want me to rule on the petition now—

"Mr. Bellows: Suppose, on what you said, that I withdraw from representing Mr. Friedrich, suppose I make this motion now, that I intend to withdraw as his lawyer, and present to your Honor in good faith that I will do so.

"The Court: I think the petition should be redrafted on the face of it here. You are still his attorney, and you know about both defendants' cases. You have another motion, a companion motion, for a list of witnesses on behalf of each defendant.

"Mr. Bellows: That problem—

"The Court: You have a third motion for statements.

"Mr. Bellows: Yes, your Honor.

"The Court: Taken all together, you are in the same position. If you withdraw you leave Friedrich. His time for filing motions was last Wednesday.

"Mr. Bellows: Your Honor, so I make myself clear—

"The Court: I recognize your problem, believe me, I do, but at the same time the inconsistency of it makes it difficult for me to exercise discretion and say I will go one way or another, when the attorney himself doesn't know where he is going.

"Mr. Bellows: Couldn't your Honor give Mr. Friedrich additional time to file new motions? You could give him a week to do so.

"The Court: I will put the whole thing over for a week. If you are going to withdraw, let him come in with substitute motions or amend these motions so the record is straight. As it is now, I think it is an impossible situation."

Several days thereafter, Bellows filed a motion for a leave to withdraw as attorney for Friedrich. The motion was allowed and one Irwin Bloch filed his appearance for Friedrich. The assistant State's Attorney at that time ob-

jected to Zahler's motion for a severance, stating that there was nothing in Zahler's motion whereby one of the defendants accused the other; that this was a requirement imposed by numerous Illinois Supreme Court cases; that there was nothing antagonistic in the case; and that there were no grounds for a severance. The court overruled these objections by the assistant State's Attorney and granted Zahler's motion for a severance. Nothing further occurred until almost one year later when Friedrich's case was reached for trial.

In the intervening period, Fleck and Lucania had been tried and Fleck had been acquitted. On June 27, 1958, Friedrich, who will be hereafter referred to as defendant, filed a petition requesting that Bellows be permitted to represent him at his trial. In that petition defendant stated that when he retained Bellows as his attorney, he was fully aware that Bellows also represented Zahler. The petition went on to recite the proceedings at the time of Zahler's motion for a severance in which the judge refused to grant the severance until Bellows withdrew as attorney for defendant. The petition stated that in compliance with conditions imposed by the trial judge, he permitted Bellows to withdraw and he retained Bloch as his attorney. It was stated in the petition that due to a disagreement between defendant and Bloch, Bloch was moved to withdraw as counsel for defendant and that defendant had no objection and consented to his withdrawal.

The petition stated that defendant wished to retain Bellows as his attorney, and that Zahler had consented to and approved of the employment of Bellows as attorney for defendant. Defendant stated in his petition that he had been admitted to the bar more than forty-one years and that he was fully informed as to the evidence in the case by reason of the previous trials of Fleck and Lucania and stated that there was no conflict of interest between defendant and Zahler on a separate trial for each of them. He

alleged that if he was compelled to retain the services of an attorney other than Bellows, such attorney would not be counsel of defendant's own choice and such forced selection would be a violation of defendant's constitutional right to an attorney of his own choice.

At the hearing on the motion, defendant stated that he had been practicing law in Du Page County, and had no experience in criminal law, and had no contact with attorneys in Chicago who were experienced in criminal cases and it was therefore difficult for him to select someone to represent him. He stated that Bellows was the only attorney of experience that he knew, and that he wanted Bellows to represent him. He stated that Bellows had gone through the transcripts of the Fleck and Lucania trials and had made a determination that he could conscientiously represent defendant and had come to the conclusion that there would not be any conflict between the defendant and Zahler if they were tried separately.

Bloch stated that he had conferred with defendant and Bellows and had been advised that while there was a feeling that if defendant and Zahler were tried together there might be antagonistic defenses, he did not believe that either one of the men felt that their rights would be jeopardized if they were each represented by Bellows in separate trials.

The court pointed out that Zahler had not so expressed himself and defendant replied that if the court would grant the petition he would file a consent by Zahler to have Bellows represent defendant. However, the court maintained his original position and stated that if defendant and Zahler wanted to waive their motion for a severance and be tried together, stating upon the record that they each felt there was no conflict of interest, he would have no objection to Bellows appearing for both of them but so long as the record showed, by the petition for a severance presented by Bellows on behalf of Zahler, that there was a conflict of

interest, he could not permit Bellows to represent defendant.

The court stated that he wanted to do what the parties wanted, so far as he could do so without violating his duty to the court and to the bar in regard to the ethics of the profession, the integrity of the profession and the integrity of the court, and that he believed that permission of Bellows to represent defendant would not be compatible with the canons of ethics or the integrity and dignity of the court and the profession. He stated that if defendant and Zahler would agree to be tried together, he would be glad to have Bellows in the case. Bloch was granted leave to withdraw upon condition that defendant obtain other counsel by July 21, who would be able to proceed to trial on that date. The case was called for trial on July 21, at which time defendant was represented by one Daniel Ahern. Prior to trial, Ahern stated that defendant did not waive his earlier petition seeking the services of Bellows and that Ahern's appearance for defendant should not be considered as a waiver of that petition.

The briefs of each of the parties refer to the provisions of the United States constitution and the Illinois constitution guaranteeing defendants in a criminal case the right to be represented by counsel. The sixth amendment of the United States constitution providing for the right to counsel is applicable only to trials in Federal courts and that provision of the amendment is not automatically made applicable to State court action by reason of the fourteenth amendment. (*Foster* v. *Illinois,* 332 U.S. 134, 91 L. ed. 1955; *Bartkus* v. *Illinois,* 359 U.S. 121, 3 L. ed.2d 684). However, in a particular case the deprivation of the right to counsel in a State court might amount to a deprivation of due process of law. We find it unnecessary to determine here whether the facts of this case require such a holding, since the case is governed by the provisions of the Illinois constitution, which is applicable to State court trials. Section 9 of article II of the Illinois constitution provides that

in all criminal prosecutions, the accused shall have the right to appear and defend in person and by counsel.

In *People* v. *Cohen,* 402 Ill. 574, we said, at page 577 : "Under these provisions of the constitution and statute the defendant had an absolute right to be represented by counsel. That the right so conferred includes the right to employ counsel of his own choice does not admit of argument." In *People* v. *Burson,* 11 Ill.2d 360, we reaffirmed our holding in the *Cohen case* and stated tht it was mandatory that the accused be given the full opportunity to select and employ his own attorney. In the present case, the trial judge refused to permit defendant to be represented by counsel of his own choice unless defendant and Zahler agreed to be tried together. The judge recognized that defendant would normally have the right to be represented by counsel of his own choice but he felt that the petition for severance, reciting alleged antagonistic defenses, required that an exception to the rule be made in the present case. We have no doubt but that the learned trial judge was acting from the best of motives and was endeavoring to protect the rights of the defendant. However, we believe that in so acting the trial judge violated the very rights he was trying to protect. The grounds which require a severance are different from those which prevent an attorney from representing conflicting interests. A severance should be granted where the defenses are antagonistic or the circumstances are such that it would be unfair to require a joint trial. (*People* v. *Lindsay,* 412 Ill. 472.) We believe the facts set forth in Zahler's motion were sufficient to show that he could not obtain a fair trial if tried jointly with defendant and, therefore, were sufficient to require a severance. With this, the trial court likewise agreed, but as a condition of granting the severance he required that defendant employ different counsel. It appears that the trial judge was of the opinion that the same grounds which authorized a severance necessarily precluded the same at-

torney from representing both parties under Canon 6 of the Canon of Ethics of the Illinois State Bar Association. We believe there is a distinction and that the distinction is applicable in this case. Canon 6 provides:

"6. Adverse Influences and Conflicting Interests

"It is the duty of a lawyer at the time of retainer to disclose to the client all the circumstances of his relations to the parties, and any interest in or connection with the controversy, which might influence the client in the selection of counsel.

"It is unprofessional to represent conflicting interests, except by express consent of all concerned given after a full disclosure of the facts. Within the meaning of this canon, a lawyer represents conflicting interests when, in behalf of one client, it is his duty to contend for that which duty to another client requires him to oppose.

"The obligation to represent the client with undivided fidelity and not to divulge his secrets or confidences forbids also the subsequent acceptance of retainers or employment from others in matters adversely affecting any interest of the client with respect to which confidence has been reposed."

It does not appear that any one of the prohibitions contained in the canon were about to be violated in the event Zahler and defendant continued to be represented by the same attorney. As stated above a full disclosure of the facts was made to both parties and the express consent of each of them was offered. Nor is there any indication that in separate trials counsel could not give his undivided loyalty to each without adversely affecting the interest of the other.

The State's argument that Bellows's representation of both defendants would be inconsistent with the Canons of Ethics is considerably weakened by the position taken by the State in the trial court. There, the assistant State's Attorney earnestly contended that there was no antagonism

shown, and therefore, no grounds for a severance existed. It is the general rule that it is not the duty of the court to advise or exercise any authority or control over the selection of counsel by a defendant who is able to and does employ counsel of his own choice. (*People* v. *Barnes,* 270 Ill. 574, 579). There are no circumstances present here to warrant a departure from this rule.

Our research has disclosed no case in which the problem presented here has been considered; that is, where the trial judge has compelled a defendant to discharge counsel of his own choice because of an alleged conflict of interest or antagonistic defense. However, several cases have been decided where the converse situation has arisen; that is, where the court has insisted on the same attorney representing two codefendants in a joint trial where their interests were allegedly conflicting. In *Glasser* v. *United States,* 315 U.S. 60, 86 L. ed. 680, relied upon by the State in the present case, Glasser was represented by counsel of his own choice and one of his codefendants was represented by another attorney. Shortly before trial the codefendant advised the court that he no longer wished to be represented by his former counsel. The court then suggested that Glasser's attorney be appointed to represent the codefendant. Following a colloquy between the court, Glasser, the codefendant, and counsel, during which Glasser objected to his attorney representing the codefendant, the court appointed Glasser's attorney to represent the other defendant. The United States Supreme Court held that by appointing Glasser's attorney as counsel for the codefendant over Glasser's objection, Glasser's constitutional right to counsel of his own choice had been violated. The situation there was different from that in the present case. In the *Glasser case,* the court appointed Glasser's attorney to represent the codefendant over Glasser's objection. Furthermore, all of the defendants were tried jointly, and, as the United States Supreme Court pointed out, in conspiracy cases the liberal rules of evidence

and the wide latitude afforded the prosecution might operate unfairly against an individual defendant, and that it was unfair that counsel undertake to concurrently represent two defendants whose interests might conflict. In the present case, the fact that Bellows represented both Zahler and defendant was known to each and they both acquiesced. Furthermore, Zahler had moved for a severance and, had this severance been granted, Bellows would not have had the task of concurrently representing each of the defendants in a joint trial.

In cases similar to the *Glasser case* it has been held that it is not prejudicial error to permit or to force one attorney to represent two defendants in a joint trial, even though it is alleged that the defenses are antagonistic. (*People* v. *Dolgin,* 415 Ill. 434; *People* v. *Fernandez,* 301 N.Y. 302, 93 N.E.2d 859, *cert. den.* 340 U.S. 914). In *People* v. *Rocco,* 209 Cal. 68, 285 Pac. 704, the same attorneys represented two codefendants. During the course of the trial, they sought leave to withdraw, stating that while acting for the defendants jointly, they had received confidential communications from them which made it unethical to represent the defendants either jointly or separately, and stating that the defenses of the codefendants were adverse to each other. The two defendants told the court that they wanted these attorneys to continue to represent them and the court refused to permit counsel to withdraw. On appeal it was held that even assuming that defendants might have been entitled to representation by independent counsel, they had the undoubted privilege of waiving that right. The court pointed out that if the trial court had permitted counsel to withdraw over the protests and objections of defendants and a conviction had occurred while one of the defendants was being represented by other counsel, such defendant would have grounds to object that, against his insistence, he had been denied the right of representation by counsel of his own choice. The reasoning of the court in the *Rocco*

*case* is persuasive and is applicable here. Even assuming that the interests of Zahler and defendant were so adverse that they should have been represented by separate counsel, the defendant had the unquestioned privilege to waive his right to separate counsel. His action in insisting that he be represented by Bellows did waive that right and, as stated by the California court, he now has grounds to complain that he was deprived of counsel of his own choice.

For the reasons stated herein, we are of the opinion that defendant was deprived of the right to counsel of his own choice. Since the judgment of conviction must be reversed on this ground, we find it unnecessary to consider the other errors assigned. The judgment of the criminal court of Cook County is reversed and the cause is remanded to that court for a new trial.

*Reversed and remanded.*