The People of the State of Illinois, Plaintiff-Appellee, v. Jesse Lee Arnold and Ronald Blaine Elliott, Defendants-Appellants.

Gen. No. 10,904.

Fourth District.

January 22, 1968.

Albert E. Hurt, Public Defender, of Decatur, for appellants.

Basil G. Greanias, State's Attorney of Macon County, of Decatur, for appellee.

SMITH, P. J.

Jointly tried on a charge of burglary, the defendants were found guilty by a jury and sentenced by the court to the penitentiary for a period of 5 to 20 years. On this appeal, they contend (1) that they should have been tried separately, (2) that a part of the combination to the safe involved in the burglary was obtained through illegal search and seizure and should have been suppressed on their motion, and (3) the evidence is insufficient to support a conviction. The defendants testified on the motion to suppress, but did not testify in the trial of the case.

The public defender was originally appointed to represent both defendants. His motion to withdraw in the representation of Arnold on the ground that the testimony to be given by Arnold would tend to incriminate the other defendant, that such testimony would be denied by Elliott, and that a conflict of interests existed was allowed. Separate trial counsel was appointed for Arnold and both defendants filed their respective motions for a severance stating that there was such conflict and inconsistency between the defendants that it would be highly prejudicial for them to be tried together. The proper appointment of separate counsel for jointly-indicted defendants is not, standing alone, the key that opens the

284

door to separate trial. Circumstances which warrant the appointment of separate counsel do not necessarily mandate separate trial and vice versa. People v. Friedrich, 20 Ill2d 240, 169 NE2d 752.

The general rule is that persons jointly indicted for the commission of a crime shall be tried together and whether a separate trial should be granted is largely within the sound judicial discretion of the trial court. People v. Wilson, 29 Ill2d 82, 193 NE2d 449; People v. Higginbotham, 56 Ill App2d 140, 205 NE2d 273. It is the responsibility of the defendant moving for a separate trial to show how he would be prejudiced by a joint trial and if he fails to do so, he cannot complain of the denial of his motion. People v. Lindsay, 412 Ill 472, 107 NE2d 614; People v. Bracken, 68 Ill App2d 466, 216 NE2d 176. Whether or not the trial judge has exercised a sound discretion depends upon the facts in each case. People v. Meisenhelter, 381 Ill 378, 45 NE2d 678; People v. Minnecci, 362 Ill 541, 200 NE 853. In the case at bar, the most that can be said for the record before us is the assertion by counsel that the two defendants had inconsistent alibis and that the defendant in a trial would give testimony that would tend to incriminate the defendant Elliott. In his argument on post-trial motion, defense counsel stated that if either defendant had testified in this case, his testimony, his evidence, would have been an alibi; that "I didn't do it, but he might have"; and that certainly would have been an antagonistic defense. Alibis may well be different but not necessarily per force inconsistent. These statements are mere conclusions of counsel, albeit no doubt honestly and forthrightly made, but devoid of any factual basis in the record. To hold therefore that a severance should have been granted by the trial court on these statements alone is to hold that counsel is the one to exercise the sound discretion in the matter and not the court. The motions for severance

properly died for want of any evidentiary oxygen to sustain them.

On the night of the burglary in question, a neighborhood witness testified that she went to the front door to call her dog shortly after 1:00 a. m. and noticed a car pulling up across the street behind their neighbor's automobile with its parking lights on. It was a small Chevrolet, light colored, white or off-white, two men got out of the car and headed west towards the building which was burglarized. She did not identify them as the defendants. Later she heard a car door slam and went to the front room, looked out and saw the car back up to the north and around the corner to the west out of her view, but in the general direction of the store. Shortly thereafter, the car came back and headed in an easterly direction. When it came under the streetlight, she noticed the trunk lid was up, the headlights were on, it was picking up speed, and as it passed under the streetlight she saw something large and blocky in the trunk and noticed that on the right side of the car there were reddish-colored doors. She identified People's Exhibit No. 1 as a picture of the car she saw. She testified that the car had a crumpled left fender and People's Exhibit No. 6 showed the left side of the car that she described. It was a picture of the same Chevrolet.

 The burglary occurred on December 3 and on December 8, the defendant Elliott was arrested at his home and taken to the sheriff's office. Sometime during the afternoon of that day, they returned to the mobile home which was owned by one Phil Hardas and with whom the defendant Elliott was living. Hardas was also the owner of the automobile involved. The police officers asked for the key to the car and the defendant Elliott gave it to them. He says they opened the trunk; they say he did. In the trunk were found portions of the safe combination. The safe itself and other parts of the combination had been found by the police officers along a country road.

Elliott suggested that they ought to ask Mr. Hardas about examining the car, but this they didn't do. Hardas was standing in the window of the trailer observing all that was going on, but neither acted nor spoke. The police officers all testified that they asked Elliott for permission to look into the trunk and he said sure look all you want. The trial court heard the evidence and denied a motion to suppress the parts of the safe combination found in the trunk of the car. So far as the defendant Arnold is concerned, it is perfectly clear that he was not present at the time of the search and did not give his consent to the search. Even assuming an invasion of the privacy of another, such invasion does not aid him. He was clearly without any standing to make a motion to suppress the parts of the safe combination and it was properly denied as to him.

■ It is abundantly clear that the car belonged to Hardas and that the defendant Elliott not only had a key in his possession, but according to his own testimony on the motion to suppress had had the relatively free use of the car on the day of the crime and for three or four days thereafter. This free use is not necessarily possession at the time of the search. Elliott denied any knowledge of the parts to the safe combination and stated to the officers that had he known they were in the car, he certainly would not have given them the key. In any event, it is doubtful whether he had any possessory interest in the car that required a search warrant, but if he did, he freely consented to its search and waived any right that he might have had.

■ Search by consent is a waiver of the constitutional protection against illegal searches. People v. Ledferd, 38 Ill2d 607, 232 NE2d 684; People v. Harris, 34 Ill2d 282, 215 NE2d 214; People v. Henderson, 33 Ill2d 225, 210 NE2d 483; People v. DiGerlando, 30 Ill2d 544, 198 NE2d 503. Whether the consent has been given is a question of fact to be initially determined by the trial

court and where the evidence on the issue is in conflict, the reviewing court will uphold the trial court's finding unless it is clearly unreasonable. See Ledferd and the cases cited therein. It should perhaps be noted here that the articles found in the trunk of the automobile were not articles which may have been used in the commission of a crime nor fruits of the crime, but were articles ". . . which may constitute evidence of, an offense" within the meaning of our Code of Criminal Procedure, Ill Rev Stats 1965, c 38, § 108–1 (d), which authorizes a search without a warrant for such articles in proper cases. In Warden, Maryland Penitentiary v. Hayden, 387 US 294, 18 L Ed2d 782, 87 S Ct 1624, the court extends the right to search for evidentiary materials which are relevant to and have evidentiary value in proving the commission of a crime or the defendant's connection therewith. Mr. Justice Douglas, in his dissent, condemns the invasion of the right of privacy yet seems to say that even this may be done if it is done by consent. In so stating he uses this language: "I would adhere to them and leave with the individual the choice of opening his private effects (apart from contraband and the like) to the police or keeping their contents a secret and their integrity inviolate. The existence of that choice is the very essence of the right of privacy." Elliott made that choice, the parts of the safe combination were properly obtained and admitted into evidence and his motion to suppress was properly denied.

A representative of the State of Illinois Crime Laboratory identified the parts of the safe combination taken from the automobile and the parts found along the roadside and testified they were at one time a single piece. The victims testified in substance that they came from their safe. The witness Hider testified that on the night of the burglary, he and several others including both of the defendants had been out drinking together and travelled in a Chevy Nova, white with two red doors on the

right side, and identified the car shown in People's Exhibit No. 1 as the one which they used. He further testified that Elliott and Arnold talked together and said they were going down to see Arnold's wife at her mother's house. Arnold was driving the car. The witness was taken to Arnold's apartment and let out there at about 1:30 a. m. on December 4. The two defendants were still in the car. The witness went to sleep in the apartment and about 9:00 a. m. he awakened and the defendant Arnold was there.

 It is at once apparent that the evidence of the defendants' participation in the crime is purely circumstantial. It is quite clear that the automobile of Hardas was involved in this burglary, that the parts of the safe combination found in the rear of that car was a part of the safe involved in the burglary, that the defendants in this case were in possession of the Chevrolet automobile at or about the time of the burglary. This record also shows that Elliott delivered soda pop to the victims' store every Monday and had done so for many weeks and was familiar with the interior of the store. The evidentiary weather vane, circumstantial though it is, points directly at the defendants. This is so, say the defendants, solely because the parts of the safe combination found in the automobile were received in evidence. We need not conjecture as to what the results might or should have been absent the parts of the safe combination in evidence. Suffice it to say that this factor, coupled with the other evidence in the case, is sufficient for a jury to reasonably conclude beyond a reasonable doubt that this car was in the custody of these two defendants at or about the time of the crime, and at or near the scene of the burglary, that the safe was carted away in that car, and that both it and the safe were then in the custody of these defendants. While circumstantial evidence must not give rise to a reasonable hypothesis under which the defendants could be innocent of the crime charged, this does not

289

mean that the trier of the facts is required to search out a series of potential explanations, compatible with innocence, but unsupported by any known evidence in the case and elevate them to the status of reasonable doubt. People v. Huff, 29 Ill2d 315, 194 NE2d 230; People v. Russell, 17 Ill2d 328, 161 NE2d 309. Jurors are not required to park their common sense in the cloakroom along with their hats and coats nor are they required to look into the crystal ball in a search for reasons unsupported by any evidence or any reasonable inference derived therefrom to structure a reasonable doubt. The evidence in this case satisfied us as it did the jury and the trial judge that the conviction of the defendants is supported by evidence establishing guilt beyond a reasonable doubt. Accordingly, the judgment of the trial court must be and it is hereby affirmed.

Affirmed.

CRAVEN and TRAPP, JJ., concur.