THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CLARENCE CHOATE, Defendant-Appellant.

Fifth District   No. 78-300

Opinion filed May 9, 1979.

Michael B. Constance and Edward J. Szewczyk, both of Belleville, for appellant.

William A. Schuwerk, Jr., State's Attorney, of Chester (Raymond F. Buckley, Jr., and Curtis L. Blood, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE GEORGE J. MORAN delivered the opinion of the court:

Defendant Clarence Choate appeals from a judgment of the circuit court of Randolph County entered on a jury verdict finding him guilty of three charges of aggravated battery. Following a sentencing hearing, at which defendant elected to be sentenced under the provisions of the new Illinois sentencing act (Ill. Rev. Stat., 1977 Supp., ch. 38, par. 1005 *et seq.*), the court assessed his punishment at 4½ years on each count with the sentences to run concurrently. Defendant contends (1) that two of the counts of aggravated battery constituted only a single offense as they are based on the same underlying acts and involve the same person, and (2) that the sentences imposed by the trial court were excessive.

The State has conceded that defendant's conviction of aggravated battery under count II should be vacated. Count II is therefore vacated. As to defendant's second allegation that the sentences imposed by the trial court are excessive, we have reviewed the record and find this issue against the defendant. Accordingly, we affirm.

The facts disclose that defendant went to the office of the sheriff of Randolph County on December 9, 1977, to inquire about his common-law wife and child who had been missing for several days. The defendant and the sheriff were acquainted with one another, as the defendant had sought the sheriff's assistance for other matters in the past. After discussing defendant's wife and child for a few minutes, the defendant suddenly lunged at the sheriff, knocking him off the end of his desk where he had been sitting. Defendant continued to strike the sheriff and kicked him in the ribs while he was on the floor. The chief of police of Chester was called and came in to break up the fight. He was also struck by defendant several times in the face. When another officer came in, the defendant calmed himself and quit struggling. The sheriff sustained cracked ribs, a sprained shoulder, two sprained fingers, and a cut on a finger from broken glass on his desk. The chief of police of Chester sustained cuts and bruises on his face.

At the trial, defendant testified that the sheriff was indifferent to his problems, never solving any of them to the defendant's satisfaction. Defendant had a past history of mental problems but had been found mentally fit to proceed in this cause. Following the return of a guilty verdict by the jury on all three counts, a presentence investigation was ordered as required by both the 1977 and the amended Unified Code of Corrections. Ill. Rev. Stat. 1977, ch. 38, par. 1005—3—1.

The defendant elected to be sentenced under the new Illinois sentencing act, known as Class X (Ill. Rev. Stat., 1977 Supp., ch. 38, par. 1005 *et seq.*), after explanation of the various sentencing alternatives available to him by the court and his attorney. The presentence report recommended commitment to the Department of Corrections as being in the best interests of the defendant and the public. This conclusion was based on a number of factors, including the defendants prior record of two battery convictions, his expressed fondness for fighting, his unsuccessful experience with probation in the past, and the psychiatrist's evaluation of him as dangerous and violent. At the sentencing hearing, the trial judge considered the information in the presentence report, along with the evidence introduced at trial as to the unprovoked nature of the attack and the extent of harm inflicted on the victims. The judge heard arguments in aggravation and mitigation, and afforded the defendant an opportunity to make a statement on his own behalf. At the conclusion of the hearing, the trial judge sentenced the defendant to three concurrent terms of 4½ years to the Department of Corrections, stating his reasons to be the presumed likelihood that the defendant would commit another offense, the expressed opinion of the Probation Department that it could not effectively supervise the defendant, and the belief that incarceration would be the best way of rehabilitating the defendant at this point.

Defendant contends on appeal that the factual circumstances surrounding the offense warrant special consideration in this case and that the new sentencing law permits an appellate court to review these circumstances de novo and adjust a sentence accordingly once a defendant affirmatively shows that a particular sentence is erroneous. This construction of the new sentencing act is a departure from previous Illinois law, which has consistently held that the imposition of sentence is within the sound discretion of the trial court and that an appellate court has no authority to modify it on review absent an abuse of that discretion. *People v. Perruquet* (1978), 68 Ill. 2d 149, 368 N.E.2d 882; *People v. Masini* (1978), 65 Ill. App. 3d 1011, 383 N.E.2d 1.

We will first consider defendant's contention that the new act changes the scope of appellate review of sentences. Prior to the passage of the new act the Subcommittee on Adult Correction of the Illinois House of Representatives submitted to the House Judiciary II Committee a draft of proposed changes to the Illinois Criminal Code. Its report included a recommendation that the appellate court's power to reduce sentences should be statutorily expended. This aspect of its study reads:

"Under the present system where sentences are imposed within a statutorily determined parameter, it is most unusual for a reviewing court to consider the problem of equalization presented by a given sentence. Usually, because of appeal courts' lack of

interest in such questions, the issue of fairness, as opposed to legality, of a sentence is presented as an issue secondary to the primary substantive legal question.

The Illinois Supreme Court Rule 615(b) provides the appellate court with the power to 'reduce the punishment imposed by the trial court.' This power to reduce sentence is rarely used, because in most cases the trial court has not communicated on the record the basis of its sentencing decision. Without such information, the appeals court will generally not change the judgment of the trial judge, on the assumption that he had an adequate basis for its decision.

Therefore, for the purpose of providing for truly effective review of sentence the Subcommittee proposes that the sentencing judge be required in every case to state his reason for selecting the particular sentence imposed. Such a statement would be made part of the record for transmission to the reviewing court.

We also propose that the narrow construction of the appellate court's jurisdiction to reduce sentences should be statutorily [sic] expanded. The Illinois Supreme Court has ruled that while Rule 615(b) allows the reviewing court to reduce a term "* * *" [it] was not intended to grant a court of review the authority to reduce a penitentiary sentence to probation.' The question of whether the reviewing court should be permitted to substitute any sentence that was available to the sentencing court is an important one that will be further explored by this Subcommittee."

The House Judiciary II Committee adopted the recommendation of the Subcommittee and submitted a sample bill to the legislature which included the following addition to section 5—5—4 of the Unified Code of Corrections:

"§5—5—4.1. Appeal—Modification of Sentence. The defendant has the right of appeal in all cases from sentences entered on conviction of murder or any other Class of felony, however, in all such appeals there is a rebuttable presumption that the sentence imposed by the trial judge is proper. The court to which such appeal is properly taken is authorized to modify the sentence and enter any sentence that the trial judge could have entered."

The legislature followed the recommendation of the House Judiciary II Subcommittee by adding section 5—5—4.1, which reads:

"The defendant has the right of appeal in all cases from sentences entered on conviction of murder or any other Class of felony, however, in all such appeals there is a rebuttable presumption that the sentence imposed by the trial judge is proper. The court to which such appeal is properly taken is authorized to

modify the sentence and enter any sentence that the trial judge could have entered, including increasing or decreasing the sentence or entering an alternative sentence to a prison term. However, the appellate court may increase a sentence only in instances where a defendant has filed a notice of appeal and raises the issue of the sentence on appeal." Ill. Rev. Stat., 1977 Supp., ch. 38, par. 1005—5—4.1.

Rule 615(b) authorized reviewing courts to reduce sentences imposed by the trial court but did not define the scope of that power nor the circumstances under which it was to be exercised. Case law delineated the boundaries of appellate review as simply that of determining whether or not the trial court had abused its discretion in imposing the particular sentence. See *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882, for a reaffirmance of that rule and the reasons behind it.

Whether this same standard of review should apply to claims of excessive sentences under the new act is the question now before us. In *People v. Stoutenborough* (1978), 64 Ill. App. 3d 489, 381 N.E.2d 415, the defendant did not raise the issue of a different standard of review when he challenged a seven-year sentence for indecent liberties with a child as excessive under the new act, and the Fourth District automatically applied the *Perruquet* rule stating that the change from indeterminate sentences to determinate sentences should not make any difference. A thorough review of the legislative history of the new act, however, convinces us that it does.

■■ The Unified Code of Corrections as originally enacted in 1973 provided for an "indeterminate" felony sentencing scheme. An indeterminate sentence is one which provides for both a minimum and a maximum sentence within the statutory range. A "determinate" sentence, on the other hand, and the type prescribed in the amended sentencing law, is one which provides for a fixed amount of time, being the maximum, within the statutory range. See Aspen, *New Class X Sentencing Law: An Analysis*, 66 Ill. Bar Journal 344 (1978), for a historical development of these concepts in Illinois.

■ The reason for the change from indeterminate sentences to determinate sentences was to reduce disparities in sentencing by limiting the discretion of trial judges in imposing sentences and the discretion of parole officials in granting parole. (See Aspen, *New Class X Sentencing Law: An Analysis*; McAnany, Merrit, Tromanhouser, *Illinois Reconsiders "Flat Time": An Analysis of the Impact of the Justice Model*, 52 Chi. Kent L. Rev. 621 (1976).) This purpose is reflected in section 5—5—4.2 of the new act, which provides that:

"The Supreme Court may by rule, not inconsistent with law,

prescribe such practices and procedures as will promote a uniformity and parity of sentences within and among the various circuit courts and appellate court districts." Ill. Rev. Stat., 1977 Supp., ch. 38, par. 1005—5—4.2.

The reduction in judicial discretion at the sentencing stage is to be effected by strict adherence to specific sentencing criteria set forth in the new law. Section 5—3—1 reduces the situations in which a presentence report may be waived by a defendant. Section 5—3—2 sets forth additional content requirements for presentence reports. Section 5—4—1 requires the trial judge to specify on the record when imposing sentences for felonies the particular factors that lead to his determination. Sections 5—5—3.1 and 5—5—3.2 set forth specific factors in mitigation and aggravation which must be considered by the trial judge in imposing sentence. James B. Bagley, Majority Counsel to the Illinois House Judiciary II Committee and also Special Counsel to the Illinois House Judiciary Subcommittee on Adult Corrections, authored an article on the new sentencing act in the March issue of Judicature, the journal of the American Judicature Society, which reads in part:

"When imposing a sentence for a felony, the trial judge must specify for the public record the particular evidence, information, factors and other reasons that led to his determination. The public record requirement was designed to insure greater accountability for sentencing practices. More importantly, the judges' statement of his reasons will give the appellate courts some basis for determining whether the sentence was proper.

\* \* \*

Overall, the sentencing guidelines establish the legislative rationale and purpose for the imposition of sentences in criminal cases as well as priorities for the types and lengths of sentences. The legislature, through these guidelines, mandates prison terms for the most serious felonies, particularly violent crimes where bodily harm was inflicted or the offender was a repeater. It also mandates for less serious, non-violent crimes that some alternative to incarceration be imposed, particularly in cases of first offenders. The guidelines were intended to promote greater uniformity and parity in sentencing, and, along with appellate review of sentences, provide a proper framework for the development of a common law of sentencing." 62 Judicature 390, 397 (1979).

Section 5—5—4.3 requires the Department of Corrections to publish annual statistical reports to trial and appellate judges regarding terms of imprisonment imposed and actually served according to offense for their use in imposing and reviewing sentences. Section 5—8—2 limits a trial judge in imposing an extended prison term unless the factors in

aggravation set forth in section 5—5—3.2 are present. The trial judge's discretion as to sentencing alternatives is likewise reduced by section 5—6—1, which makes probation in a preferred sentencing choice, and by section 5—5—3, which excludes fines or restitution from being the sole dispositions in felony cases. Furthermore, the new law contains automatic guidelines for appellate review in the sentencing criteria established by the legislature. Add to this the specific inclusion of a provision authorizing appellate review of sentences and specifying the effect that the trial court's determination should have upon that review, and it is reasonable to conclude that the legislature intended to confer a broader standard of review on appellate courts than that previously existing under judicial definition.

In determining legislative intent, it is presumed that the General Assembly acted with knowledge of judicial decisions concerning prior and existing law. (*Mier v. Staley* (1975), 28 Ill. App. 3d 373, 329 N.E.2d 1.) When faced with the issue of statutory interpretation, a court may examine not only the language used in the statute, but also the reason for the new law and the evil to be remedied, as well as the objectives and purposes of the statute. (*People v. McPherson* (1978), 65 Ill. App. 3d 772, 382 N.E.2d 858.) Applying these principles, the fact that the legislature used the term "rebuttable presumption" rather than "abuse of discretion" in section 5—5—4.1 indicates that it intended to change the standard to be employed in reviewing sentences. This conclusion comports with the reason for the new law and the evil which it seeks to remedy by eliminating disparate sentences throughout the State for similar types of offenses. If appellate courts continued to defer to the discretion of trial courts whenever a sentence was within the statutory range without regard to whether or not it was appropriate under all the facts and circumstances, then the purpose of the new law would be defeated. Sentencing equality would not be promoted, judicial discretion would not be curtailed, and the penalty would not be fashioned to the particular offender as well as to the offense. The mere fact that the trial judge cites compliance with the statutory criteria is not a guarantee against sentencing error. He may merely apply the factors in a mechanical fashion, without considering whether one outweighs another in a particular situation.

The American Bar Association Standards Relating to Appellate Review of Sentences (Approved Draft, 1968, and Proposed Revisions) further advocates a broad scope of review of sentences. The Unified Code of Corrections as originally enacted and its amended version are patterned after the American Bar Association Standards Relating to Sentencing Alternatives and Procedures (Approved Draft, 1968), with input from the Standards for Appellate Review. The scope of review

recommended is an independent one on the record geared to equalizing the sentencing process. (ABA Standards for Appellate Review §§3.1 and 1.2.) The proposed revisions to the Standards for Appellate Review extend the authority of the reviewing court to assess the propriety of the sentence rendered below. ABA Standards for Appellate Review §3.2.

While it is clear that the legislature did not intend to confer a de novo standard of review on the appellate courts by its rejection of proposed sections 5—10—5 and 5—10—6, it is equally clear that it did not intend to continue the old abuse of discretion standard by its deliberate exclusion of language to that effect with full knowledge that it was the accepted standard. None of the review statutes for other States listed in appendix A of the ABA Standards for Appellate Review of Sentences contain language similar to that of section 5—5—4.1 of the new Illinois sentencing act. In the absence of a statutory definition indicating a different legislative intent, courts will assume that statutory words have their ordinary and popularly understood meanings. (*People v. Blair* (1972), 52 Ill. 2d 371, 288 N.E.2d 443.) When a statute uses words which have a well-known legal meaning, courts will further assume that is the meaning intended by the legislature. *Midwest Television, Inc. v. Champaign-Urbana Communications, Inc.* (1976), 37 Ill. App. 3d 926, 347 N.E.2d 34.

■■ ■ Defendant contends that the term "rebuttable presumption" as used in section 5—5—4.1 is a restatement of the rule that every reasonable intendment favorable to a ruling of the court below will be indulged, and that in the absence of an affirmative showing to the contrary, a ruling of the court below will be presumed to have been properly made and for sound reasons. (5 Am. Jur. 2d *Appeal & Error* §704 (1962); *People v. Couvion* (1965), 33 Ill. 2d 408, 211 N.E.2d 746.) The effect of a rebuttable presumption is to establish a prima facie case, thereby relieving the party in whose favor it arises from presenting further evidence and requiring the opposing party to produce contrary evidence. (*Flynn v. Vancil* (1968), 41 Ill. 2d 236, 242 N.E.2d 237.) Defendant submits that once he makes an affirmative showing that the sentence imposed by the trial court is erroneous in his particular situation, then the appellate court is authorized to reduce it. We believe this interpretation to be a correct statement of the nature and effect of appellate review under section 5—5—4.1 of the new Illinois sentencing act. We now turn to the question of whether defendant has made such an affirmative showing of error in this case.

Defendant contends that the factual circumstances surrounding the offense of aggravated battery in this case are unusual and should work to mitigate the sentence imposed thereon. Section 5—5—3.1(a)(4) of the new act lists as one of the factors to be considered in mitigation as "substantial grounds tending to excuse or justify the defendant's criminal conduct, though failing to establish a defense." Specifically, defendant

contends that he was on friendly terms with the sheriff and that his actions were not the product of a criminal mind bent on destruction or harming other persons. Rather, his actions were the result of a mind in disarray due to his concern and confusion over locating his family. Defendant further contends that other troubling incidents had recently taken place, such as the firing of a gun through his window at home and the splitting of his trash can, and that he was frustrated by the sheriff's supposed lack of assistance and interest in his problems. These contentions bring into play another mitigating factor listed in the statute to the effect that "the defendant's criminal conduct was the result of circumstances unlikely to recur" (par. 1005—5—3.1(a)(8)). The fact that the defendant was on friendly terms with the sheriff does not tend to justify his unprovoked attack on the sheriff. To the contrary, a friendly relationship should foster feelings of patience and understanding, and if one is prone to attack his friends in times of anxiety, consider what he will do to his enemies or to strangers. The fact that the defendant was experiencing emotional distress at the disappearance of his family and viewed the sheriff as not doing anything about it or defendant's other problems, likewise does not justify defendant's physical assault on the sheriff.

Defendant further contends that he does the best he can under his circumstances and that his long history of disabling mental problems should tend to diminish the criminality of his conduct. The record indicates that defendant has been on disability since 1959 and has been admitted to various mental institutions in the State since that time. Despite these problems, the defendant has managed to own and maintain a home and develop family ties. It should be noted in connection with defendant's reliance on mental problems that he was, however, examined by a court-appointed psychiatrist and found to understand the nature of the charges against him and able to participate in his defense.

■■ Defendant finally contends that the nature of the injuries inflicted on the victims does not justify a sentence of 4½ years. Section 5—5—3.1(a)(1) lists as a factor to be considered in mitigation that "the defendant's criminal conduct neither caused nor threatened serious physical harm to another." Defendant acknowledges the injuries suffered by the sheriff were cracked ribs, a sprained shoulder, two sprained fingers and a cut on an index finger. The injuries sustained by the chief of police of Chester consisted of bruises on both cheeks and across the bridge of the nose. Defendant contends that none of these injuries normally result in permanent problems and that there is no reason to believe they will do so in this case. The record indicates that the sheriff's shoulder was still bothering him at the time of trial, 2½ months later. The extent of the injuries is another factor to consider here. In the case of the chief of police, defendant was prosecuted under a theory of bodily harm

aggravated by the fact that the victim was a peace officer engaged in the official execution of his duties. In order to establish "bodily harm" in a battery case, there is no requirement that the evidence demonstrate a visible injury such as bruising, scratching, or bleeding, although these clearly were suffered in this case. (*People v. Taylor* (1977), 53 Ill. App. 3d 810, 368 N.E.2d 950.) Furthermore, the defendant was clearly capable of inflicting more serious injuries due to his physical proportions—six feet in height, 255 pounds—and very likely would have done so if a deputy had not arrived to assist the sheriff and the chief of police. Defendant's criminal conduct therefore both "caused and threatened serious physical harm to another."

■■ Defendant has not made an affirmative showing on any of his contentions that the sentence of 4½ years set by the trial court is erroneous for either count of aggravated battery. Therefore, he has failed to rebut the presumption that the sentence is proper under the circumstances of this case.

Judgment affirmed as to count I and count III.

Judgment vacated as to count II.

KARNS and KUNCE, JJ., concur.