THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CHARLES BRYANT, Defendant-Appellant.

Third District No. 78-392

■■■■■■■■

Opinion filed December 19, 1979.

Robert Agostinelli, of State Appellate Defender's Office, of Ottawa, for appellant.

Michael M. Mihm, State's Attorney, of Peoria (John X. Breslin and Rita F. Kennedy, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE BARRY delivered the opinion of this court:

Having been found guilty of burglary and sentenced to a term of imprisonment of five years, the defendant, Charles Bryant, brings this appeal to raise as issues whether there was sufficient evidence of his intent to commit a theft in the victim's apartment to prove guilt of burglary beyond a reasonable doubt and whether the sentence imposed was excessive. At the trial, the victim, William Thompson, testified that at approximately 9:20 a.m. on the morning of August 30, 1977, he was in the bedroom of his apartment watching television when he heard a noise from the vicinity of the kitchen, but did not investigate, thinking it might

be his girlfriend getting off from work. About five minutes later, he went to the kitchen where he observed Charles Bryant, a man who he had seen on other occasions, standing about six feet inside the doorway of his kitchen. The witness stated that he swore at Bryant and asked Bryant what he wanted. Thompson then ran into the bedroom to secure something with which to protect himself. Upon returning to the kitchen, however, he discovered that the defendant had departed.

After calling the police, Thompson went back to the door to see if the defendant had left. At the door, the witness testified, he noticed that the door was off its hinges and had apparently been pried loose. Thompson then placed another call to the police to see if they were coming and returned to the kitchen door where he saw Bryant coming back up the stairs. Police subsequently arrived at the scene and took fingerprints from the area of the door. Thompson denied ever giving Bryant permission to enter his apartment.

During cross-examination, Thompson stated that when he initially confronted the defendant in the kitchen area and asked Bryant what he was doing there, Bryant responded that he wanted to talk to Thompson, and Thompson indicated they had nothing to talk about and asked the defendant to leave, which he did. Defendant went down the stairs and then returned and again attempted to talk to Thompson. Thompson again refused and again asked the defendant to leave. Once again, the defendant complied.

Craig Ganda, a police officer with the city of Peoria, was the next witness called on behalf of the State. Officer Ganda testified that on the date in question he had occasion to report to the Thompson residence in the capacity of crime scene investigator. Once at the scene, Officer Ganda noted that the door leading to the kitchen had been pried off and, in Ganda's opinion, there had been "quite a bit of effort" in getting the door removed from the hinges. The witness stated he then dusted the door and secured fingerprints which were subsequently identified as belonging to Charles Bryant. No fingerprints, however, were found in the kitchen area of the apartment.

David Knauss, also an investigator for the city of Peoria Police Department, testified that at approximately 5:44 p.m. on September 9, 1977, he had occasion to interview the defendant, in which interview Bryant denied ever being at the address in question and also denied knowing William Thompson. Confronted with evidence already gathered in the case, including the defendant's latent fingerprints, defendant commented that he knew he was going to do penitentiary time and saw no advantage to either confessing to the offense or altering his earlier comments.

The defendant, assuming the stand in his own defense, testified that he had known William Thompson for better than a year and admitted seeing him near his home on the date in question. At the time the defendant saw Thompson, the defendant was exiting a lounge he had entered in order to make a telephone call. Coming out of the lounge, he noticed that the door of his Cadillac had been cracked open and he observed three men running up a stairwell at 1212 Adams. Defendant recognized one of the three men as being William Thompson.

Defendant said he examined the car, he noticed that a bag containing marijuana was missing, and then he immediately started to yell for the trio to stop. When they failed to stop, Bryant began chasing them. At the top of the stairwell, Bryant began banging on the door on the left. When no one answered, he began banging on the opposite door. Although no one answered that door either, the defendant testified he could hear people moving around. Banging and kicking at the door for two or three minutes, Bryant yelled for the men to open the door and return his property. Since this was not done and since the defendant heard noises which sounded as though the men were trying to exit through another door, the defendant testified he panicked and began removing the already loose door hinges. When the door was removed, he saw Thompson standing in front of him in the kitchen. Defendant denied crossing over the door, entering the apartment, or touching anything inside.

Thompson told defendant he better leave the apartment. According to the defendant, Thompson appeared to get frantic and "broke" towards a room. In returning downstairs to his car, he looked up and saw another empty apartment in the front of Thompson's. Believing that the other men could have gone in there, he started back up the stairs, but was once again confronted by Thompson, who was standing at the top step with his hands behind him. Thompson then warned the defendant that he had already been told to go and that defendant should leave before he got "burned."

The testimony of the defendant was the only evidence produced by the defense. Following his testimony, the State introduced into evidence, for the purpose of impeachment, a certified copy of the defendant's prior misdemeanor conviction for deceptive practice.

■■ As was stated so concisely in *People v. Rossi* (1969), 112 Ill. App. 2d 208, 250 N.E.2d 528:

> "There is no disagreement as to the legal principles which apply. Specific intent to steal must exist and be measured at the time of unauthorized entry into the dwelling of another, and the State has the burden of proving the necessary intent. People v. Maffioli, 406 Ill 315, 320, 94 NE2d 191 (1950); People v. McCombs, 94

Ill App 2d 308, 312, 236 NE2d 569 (1968). Since a person's state of mind is not subject to direct proof, ordinarily intent must be proved circumstantially by inferences drawn from conduct. In the absence of inconsistent circumstances, proof of unlawful entry into a building which contains personal property that could be the subject of larceny gives rise to an inference that will sustain a conviction of burglary. The inference is grounded in human experience which justifies the assumption that the unlawful entry was not purposeless, and, in the absence of other proof, indicates theft as the most likely purpose. People v. Johnson, 28 Ill 2d 441, 443, 192 NE2d 864 (1963); People v. Powell, 61 Ill App 2d 238, 245, 246, 209 NE2d 345 (1965)." (*People v. Rossi* (1969), 112 Ill. App. 2d 208, 211-12, 250 N.E.2d 528, 529-30.)

However, the defendant argues that since his testimony attempted to explain his actions, circumstances exist which are inconsistent with his being found guilty.

With this contention we cannot agree, and the cases cited by the defendant do not support his argument. In *People v. Soznowski* (1961), 22 Ill. 2d 540, 177 N.E.2d 146, and *People v. Perry* (1971), 133 Ill. App. 2d 230, 272 N.E.2d 766, the accused, upon entering the premises, did acts which were inconsistent with an intent to commit a theft therein. In *Soznowski*, the defendant perpetrated a battery upon an occupant of the house, and in *Perry*, the defendant had an opportunity for theft but the evidence established that he neither stole nor attempted to steal anything. ■■ To argue that the evidence in the case at bar establishes that the defendant did no overt act, after prying off the door, toward the completion of an intent to commit theft begs the question. This defendant had no opportunity to carry out his intention, and the jury could reasonably infer, from the defendant's prying the door off the hinges alone, that he did so intending to commit a theft in the apartment. It is the responsibility of the jury, where testimony is conflicting, to assess which of the witnesses to believe. (*People v. Henderson* (1974), 18 Ill. App. 3d 457, 309 N.E.2d 242.) The trier of fact need not accept the defendant's version. *People v. Henderson* (1974), 18 Ill. App. 3d 457, 309 N.E.2d 242; *People v. Konetzke* (1974), 17 Ill. App. 3d 800, 308 N.E.2d 649.

It is the belief of the defendant, that, as in *People v. Shegog* (1976), 37 Ill. App. 3d 615, 346 N.E.2d 208, even an improbable explanation creates a question on the element of intent to commit a theft. However, the defendant fails to recognize that, in the case at bar, the jury has already resolved the question. Whereas, in *Shegog*, this court addressed a somewhat different issue concluding that the resolution of the question of intent to commit theft ought to be free from the prejudicial influence of an improperly admitted incriminatory statement.

■■ On the issue of whether the sentence imposed was excessive, we

agree with the defendant that the standard for reviewing such sentences has changed with the new Illinois sentencing act, adopted effective February 1, 1978 (Ill. Rev. Stat. & 1978 Supp., ch. 38, par. 1005—1—1 *et seq.*). Now, instead of requiring a clear showing of abuse of discretion on the part of the sentencing judge, the sentence imposed is rebuttably presumed to be proper, with the appellate court having the authority to reduce the sentence upon an affirmative showing by the defendant that the sentence imposed was erroneous. (*People v. Choate* (1979), 71 Ill. App. 3d 267, 389 N.E.2d 670). Yet, the defendant has failed to affirmatively demonstrate that the sentence imposed was erroneous.

■■ This defendant's history of prior delinquent and criminal behavior is significant. As a juvenile, he was involved in purse snatching, auto larceny and assault. Early in his adult life, he turned to armed robbery, petty theft and the unlawful use of weapons. It is argued that, because he has only been convicted twice of deceptive practices, in 1974 and 1978, and now of burglary, since his parole in 1971, the defendant has led a law-abiding life for a substantial period of time. This, according to the defendant, is a factor which should have been considered by the sentencing judge. (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005—5—3.1(a)(7)). We cannot agree that the defendant is exhibited to have led a law-abiding life for a substantial period of time even though his more recent history is relatively more law-abiding than his earlier life.

■■ Other mitigating factors, according to the defendant, are that this was the type of incident not likely to recur and that the defendant was somewhat justified in his actions because he was attempting to recover his own property. (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005—5—3.1(a)(4), (8).) To find these mitigating factors, one must believe the defendant's version of the incident, which the jury did not do. Moreover, even an analysis of the defendant's story demonstrates the absence of these mitigating factors. The defendant, admitting he was unaware which door the alleged thieves entered, nevertheless proceeded to pry off the door to Thompson's apartment. There is no justification for this utter disregard of others' property. In any event, since neither the jury nor the trial judge, who had an opportunity to observe and listen to the defendant as he testified, believed his testimony, this court cannot accept his explanation as true in seeking mitigating circumstances.

We agree with the defendant that his conduct neither caused nor threatened serious physical harm to another. (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005—5—3.1(a)(1).) However, this mitigating factor must be weighed against the defendant's extensive prior history of delinquent and criminal conduct (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005—5—3.2(a)(3)), and the necessity of deterring others from

committing the same crime (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005—5—3.2(a)(7)). It has not been established that the sentence imposed is erroneous.

Accordingly, the judgment of the Circuit Court of Peoria County is affirmed.

Affirmed.

ALLOY and STENGEL, JJ., concur.