THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
DOUGLAS B. CLUNE, Defendant-Appellant.

Third District    No. 79-491

Opinion filed March 28, 1980.

Robert Agostinelli, of State Appellate Defender's Office, of Ottawa, for appellant.

Michael M. Mihm, State's Attorney, of Peoria (John X. Breslin and Rita F. Kennedy, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE SCOTT delivered the opinion of the court:

Having been originally indicted on two counts of indecent liberties with a child and one count of aggravated incest, the defendant, Douglas Clune, pleaded guilty to one count of indecent liberties with a child, the other charges being dropped as the result of a partial plea agreement, and was sentenced to a determinate term of imprisonment of eight years. In this appeal the defendant challenges only the propriety of the sentence imposed.

The factual basis for the guilty plea was that on May 23, 1978, 12-year-old Angela Clune was at home in Peoria with her father, the defendant, at a time when her mother was away from the residence. Angela would testify that she was at home washing dishes and there were other children present in the upstairs portion of the house. The defendant came into the area where she was doing dishes and led her into his bedroom. Once in the room defendant locked the doors and told the prosecutrix to remove all her clothes. He then told the girl to lay down and he in turn removed his clothing. The defendant then laid on top of her and put his penis into her vagina. The complainant screamed, and at that time heard her sister, Wanda, knocking on the bathroom door which led to the bedroom. Angela Clune would further testify that the defendant told her to say that she fell off the bed and had hit her arm. When she got up, she noticed that she was bleeding from her vagina.

Wanda Clune was prepared to testify that on the date in question she was vacuuming the house in the afternoon and heard her sister, Angela,

screaming. She then went to the bathroom door and knocked. The State established the defendant's age to be 41.

On May 3, 1979, a hearing in aggravation and mitigation was held and two witnesses were called in the defendant's behalf. Mr. Randy McGraw, an alcoholism counselor and program coordinator for the Alcoholic Rehabilitation Center, testified that he had recently interviewed the defendant for a period of two hours and, since it was his opinion that every alcoholic has a potential for rehabilitation, he concluded that the defendant was in need of, and could benefit from, in-patient alcoholic care. Since the defendant was a veteran with an honorable discharge, he would be eligible to receive such treatment in the "very good treatment center" located in Danville. If the defendant were to go there, McGraw's organization could provide transportation.

The second witness to testify on behalf of the defendant was his wife of six years, Carol Clune. Mrs. Clune stated that she currently had custody and control of her own daughter, as well as her three stepchildren. Although Mrs. Clune had originally initiated the charges against the defendant, it was her testimony that she held no animosity toward him and felt that all of the defendant's problems were alcohol related. Since the defendant had never been afforded an opportunity to receive treatment for his alcohol addiction, Mrs. Clune felt that he deserved at least that one chance.

However, the presentence report indicated that the defendant's daughter had reported to the investigator that this occurrence for which the defendant was convicted was not an isolated incident. She stated that her father's sexual advances were so frequent she was unable to say how many times it had happened. The last such occurrence was on October 25, 1978.

Furthermore, the presentence report disclosed the defendant's prior criminal record. On November 28, 1958, the defendant was convicted of burglary in a proceeding before a California court and was sentenced to three years probation, conditioned upon his serving 60 days in jail. Subsequently this probation was revoked, but it was reinstated, although extended to 10 years, when the defendant was convicted of grand theft on September 26, 1962. Thereafter, on February 18, 1964, this probation was also revoked since the defendant had not been in contact with the probation department since November 6, 1963.

On January 30, 1968, the defendant pleaded guilty in an Oregon court to the charge of deceptive practices, a misdemeanor, and was then extradited to California where, on March 13, 1968, two consecutive sentences were imposed. On August 23, 1969, the defendant was paroled, and on September 13, 1971, he was released from parole.

In addition, the presentence report included the reports of a

psychiatrist and a registered clinical psychologist who had each inter-
viewed the defendant. T. W. Mathews, a registered clinical psychologist,
pointed out that the chronic alcoholic often responds well initially due to
the external stress resulting from the apprehension of the punishment
which will result from his misbehavior, but, typically, "the enthusiasm
and ability to work productively in psychotherapy, however, diminishes
rapidly as soon as the external stress is removed." It was Mr. Mathews'
conclusion that "(j)udging from the information at hand, it would appear
that the likelihood of major changes in Mr. Clune's pattern of behavior as
a result of psychotherapeutic or social agency intervention would be
considered quite small."

Mortimer D. Beck, M.D., who examined the defendant at the
defendant's request, reported:

> "I find this man to be a hypomanic, nonpsychotic individual of
> great energy, mostly unchanneled and marked restlessness [sic].
> He is a person of little insight who finds himself in a difficulty
> which he wants to escape from. It seems to me that any attempts at
> psychiatric treatment would fail as it is set up at the present time.
> That is, he would 'cooperate' and be passive- aggressively
> torpedoing the treatment all the time. He would go back to alcohol
> and blame the therapist for doing a poor job."

As a result, Dr. Beck concluded that psychiatric treatment of the
defendant would fail and, if he went back to using alcohol, the defendant
could be a threat to himself and his children.

In pronouncing sentence, the trial court reasoned that, having regard
of the nature and circumstances of the offense and the history and
character of the defendant, a sentence of imprisonment was necessary to
protect the public and that a sentence of probation or conditional
discharge would not only deprecate the seriousness of the defendant's
conduct, but would also be inconsistent with the ends of justice.
Additionally, the trial court found that the circumstances of the offense
were likely to recur; that because he had previously failed to complete
probation he would not likely comply with the terms of a probationary
sentence; that sexual intercourse with a 12-year-old daughter was the type
of conduct that threatened serious harm to another; that there was no
provocation whatsoever to commit this offense; that there were no
grounds tending to excuse or justify the defendant's conduct; that while
the intoxication was a mitigating factor, the defendant had a drinking
problem for about 23 years and did nothing to correct the problem; that
the defendant has a history of prior criminality; and that defendant's
incarceration is necessary to deter others from similar conduct.

■■ In this appeal the defendant argues that the eight-year sentence

imposed is excessive and ought to be reduced. While a defendant may appeal from the sentence imposed, on appeal there is a rebuttable presumption that the sentence imposed was proper. (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005—5—4.1.) An appellate court will not, however, review the circumstances *de novo*, but will reduce the sentence only where the defendant has made an affirmative showing of error. *People v. Choate* (1979), 71 Ill. App. 3d 267, 389 N.E.2d 670.

The defendant here does not challenge the refusal of the trial court to impose a sentence of probation, but argues that the eight year determinate term of imprisonment is unwarranted. Several mitigating factors, according to the defendant, exist. First, the defendant has a wife and three children. These are precisely the people who need to be protected from the defendant.

That the defendant received an honorable discharge from the United States Air Force on July 12, 1958, may have some mitigating value, but it can hardly be said to overcome all the aggravating factors present in this case. Nor is the fact that the defendant has been promised employment a significant mitigating factor in this case. In the approximately two years prior to his arrest, the defendant had four employers. Two of these employers terminated the defendant due to his drinking problems. In a third job the defendant quit because, he said, he was discouraged by his employer, but this employer informed the presentence investigator that the defendant's work was unsatisfactory due to the defendant's drinking problem. At the time of his arrest the defendant was unemployed.

It is therefore apparent that the value of the offer of employment as a mitigating factor depends on the probability of success of the defendant in overcoming his drinking problem. The defendant argues that his attempt to resolve this problem is a mitigating factor.

To some extent that is true. However, a psychiatrist and a clinical psychologist have reported that the attempt to rehabilitate this defendant will fail, and one has concluded that his return to alcohol will endanger his children. These conclusions also contradict the defendant's point that, given the proper treatment, his conduct is not likely to recur. Moreover, the defendant, during the sentencing hearing, stated to the court that from his very recent experience with Alcoholics Anonymous he was aware that the temptation always exists to return to drinking.

The trial court could find from this information that the attempt of the defendant to solve his drinking problem would fail and that, as a result, his employment opportunities would evaporate and the defendant's children would be endangered from the likelihood of recurrence. This position is further enforced by the fact that the conduct for which the defendant was convicted was not an isolated incident and

that the defendant had on a number of occasions made sexual advances toward his daughter.

But, argues the defendant, no serious harm has occurred to the victim. The presentence report here indicates that the defendant's daughter is undergoing sexual abuse counseling, and this court has recognized the considerable psychological harm to the victim resulting from child molestation. *People v. Matthews* (1979), 69 Ill. App. 3d 65, 387 N.E.2d 10.

■■ Lastly, the defendant contends that his prior convictions were so old that they should not have been considered as aggravating factors. While it is true that two of the convictions date back 20 and 16 years prior to this conviction, the significance of these encounters with the law is that, when given the opportunity to reform, the defendant chose not to conform his conduct to the requirements of the law. Although the defendant's initial conviction occurred some 20 years prior to his most recent conviction, the defendant's entire criminal history demonstrates a long-standing failure to comply with the law. In fact, the defendant was released from parole only seven years prior to the commission of the instant offense.

The defendant argues that he has led a law-abiding life for a substantial period of time. There is no need to split the semantic hair as to what is or what is not a substantial period of time. Even if seven years is considered a substantial period of time, this factor can not overcome the significant aggravating factors present in this case.

Since the defendant has failed to affirmatively demonstrate the error of the sentence imposed, the judgment of the circuit court of Peoria County is affirmed.

Affirmed.

BARRY and STENGEL, JJ., concur.