THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MICHAEL J. LEWIS, Defendant-Appellant.

First District (2nd Division)    No. 79-1138

Opinion filed September 16, 1980.

James J. Doherty, Public Defender, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago, for the People.

Mr. JUSTICE STAMOS delivered the opinion of the court:

Following a bench trial on April 6, 1979, defendant, Michael Lewis, was found guilty of voluntary manslaughter and sentenced to the Department of Corrections for a term of six years. The sole issue presented is whether the trial court's sentencing was so excessive as to warrant modifi-

cation on appeal. Because of the limited scope of this appeal, only those facts pertinent to the sentencing are related.

Defendant was indicted and tried on two counts of homicide. The evidence elicited at trial, both from State and defense witnesses, tended to establish with only minor discrepancies the following facts. In the late evening of October 27, 1977, defendant was standing at the bar in the Lime Room lounge in Chicago. Another customer, later identified as Eugene Sperman, approached defendant and demanded that defendant buy a drink for him. Sperman then kicked defendant under the bar. Defendant first asked Sperman to leave him alone. When Sperman persisted, however, defendant left the lounge. As Sperman followed defendant out of the lounge, defendant once again asked to be left alone, explaining that he had just been released from the hospital where he was treated for a heart condition. Sperman, despite the pleas, kicked defendant behind the neck and in the lower part of the back with karate-like blows. As defendant tried to move away, Sperman kicked him again, grabbed his hat, and threw it into the street. Defendant sought assistance from a passing police car. Defendant testified, however, that the police laughed and "told me to get my ___ out of the street before I got killed." When the police car left, Sperman attacked defendant still another time, at one point knocking him to the ground in front of a passing car and bus. Sperman then shouted at defendant, calling out that he would kill him. Defendant fled.

Eyewitnesses to the attack testified that at no time did defendant strike Sperman. Instead, up to this point, Sperman was the aggressor. The time of the incident was set at between 11:30 p.m. and midnight. Defendant's testimony related his emotional state as he left Sperman: "I became so infuriated I didn't even recognize the pain, I was just so furious." Defendant stated that he did not attempt to strike Sperman but hurried the short distance to his apartment (variously described by the witnesses as three blocks or 50 to 60 yards), secured his loaded gun, and returned to the scene. He went into the Lime Room lounge, but seeing no one there, proceeded to the nearby E&L lounge.

The bartender at the E&L testified that he sold Sperman a "couple of beers and couple of shots." At approximately 12:15 a.m., the bartender heard two shots from the area where Sperman was standing and saw defendant holding a gun. Other patrons of the bar testified that they did not see Sperman move away from the bar prior to the shooting, and that they saw defendant fire the second shot.

Defendant stated that he went into the E&L lounge and saw Sperman standing at the bar; Sperman reached over the bar, turned around, and took two or three steps toward him. Defendant testified: "When he came towards me, I had fear that he would naturally jump on me again, and my only thought was to defend myself." Defendant drew his pistol and fired

shots, resulting in Sperman's death. Defendant laid the gun and his hat on the bar, and admitted to the police that he had fired the shots. Defendant further testified that he did not begin to think rationally until two days later.

The trial court found defendant guilty of voluntary manslaughter, commenting that the facts were insufficient for self-defense but that the evidence showed sufficient provocation to reduce the murder charges. At the sentencing hearing, defendant produced character witnesses to testify to factors in mitigation. Each indicated a willingness to work with defendant or to find him employment. The witnesses testified to defendant's potential and good character. Defendant testified stating he was remorseful about Sperman's death and that, if given probation, he would rehabilitate himself.

The court commented that it had read the investigative report and would take it into consideration. The State then presented a prior conviction for grand larceny and the nature of the instant offense as factors in aggravation. Following all of the evidence, the court stated that it would deny defendant probation. It then recited the salient details of the crime and stated:

> "[P]eople just cannot take the law into their own hands and do what you did.
>
> * * *
>
> Ironically speaking, the things that you have raised now for probation, are the things that perhaps got you a guilty of voluntary manslaughter rather than murder.
>
> I understand that you were infuriated and embarrassed and so forth, at the Lime Room * * *. And there was no reason for this Mr. Sperman to attack you the way he did. I'm sure of that, but you had sufficient time in my opinion to at least cool off to some extent.
>
> * * *
>
> [T]he Court taking all the things into consideration that have been suggested here, and in aggravation and mitigation, as well as the probation prepared [sic], pre-sentence investigation report, the Court is going to impose sentence of the Illinois Department of Corrections for six years, to be given credit for time served in the County Jail."

This appeal followed.

Defendant contends that where the trial court is presented with the mitigating factors of character references and employment prospects as well as the provoked nature of the crime, a sentence of 6 years for voluntary manslaughter is excessive. He requests that this court reduce his sentence to probation and maintains that the proper standard of appellate review is that contained in section 5—5—4.1 of the Unified Code of

Corrections as applied in the recent cases of *People v. Choate* (1979), 71 Ill. App. 3d 267, 389 N.E.2d 670, and *People v. Cox* (1979), 77 Ill. App. 3d 59, 396 N.E.2d 59. Section 5—5—4.1 of the Code provides:

"The defendant has the right of appeal in all cases from sentences entered on conviction of murder or any other Class of felony, however, in all such appeals there is a rebuttable presumption that the sentence imposed by the trial judge is proper. The court to which such appeal is properly taken is authorized to modify the sentence and enter any sentence that the trial judge could have entered." Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—4.1.

Prior to February 1, 1978, the effective date of the enactment of the above provision, it was settled that the imposition of a sentence was a matter of judicial discretion and that, absent an abuse of this discretion, the sentence of the trial court could not be altered on review. (See *People v. Perruquet* (1977), 68 Ill. 2d 149, 153, 368 N.E.2d 882.) In *People v. Bolyard* (1975), 61 Ill. 2d 583, 589, 338 N.E.2d 168, the supreme court stated that the trial court which heard the evidence could make the most reasoned sentencing judgment since its decision would be based upon the circumstances of each case, including demeanor and credibility of the witnesses. (See also *People v. Caldwell* (1968), 39 Ill. 2d 346, 356, 236 N.E.2d 706.) Accordingly, under the case law and statutes in effect prior to the enactment of the "Class X" sentencing act (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—4.1), the standard for appellate review was abuse of discretion. See, *e.g., People v. Lykins* (1979), 77 Ill. 2d 35, 40, 394 N.E.2d 1182; *People v. Goodwin* (1980), 83 Ill. App. 3d 203, 206, 403 N.E.2d 1051; *People v. Gonzales* (1979), 78 Ill. App. 3d 1146, 1149, 398 N.E.2d 422; but see *People v. Heflin* (1978), 71 Ill. 2d 525, 545, 376 N.E.2d 1367, *cert. denied* (1979), 439 U.S. 1074, 59 L. Ed. 2d 41, 99 S. Ct. 848 (reviewing court will only disturb sentence where penalty constitutes a great departure from the fundamental law and its spirit and purpose); *People v. Horton* (1976), 43 Ill. App. 3d 150, 157, 356 N.E.2d 1044 (sentence reduced where it "severely diminishes the possibility of defendant's rehabilitation").

Defendant urges that the abuse of discretion standard has been supplanted by a "new standard" of review set out in section 5—5—4.1, a "rebuttable presumption that the sentence imposed by the trial court is proper." Under the rebuttable presumption standard, defendant maintains that his sentence should be reduced if he makes an affirmative showing that the sentence of the trial court was erroneous. The development of this new standard derives from language in the cases of *People v. Choate* (1979), 71 Ill. App. 3d 267, 273, 389 N.E.2d 670, and *People v. Cox* (1979), 77 Ill. App. 3d 59, 61-62, 396 N.E.2d 59. A substantial number of decisions in the Third, Fourth, and Fifth Judicial Districts, following *Choate* and *Cox*, have adopted explicitly the "rebuttable presumption"

standard of appellate review which the legislature set out in section 5—5—4.1. (See, *e.g.*, *People v. Huffman* (1979), 78 Ill. App. 3d 525, 526, 397 N.E.2d 526; *People v. Audi* (1979), 73 Ill. App. 3d 568, 571, 392 N.E.2d 248; *People v. Godinez* (1980), 81 Ill. App. 3d 547, 550, 401 N.E.2d 658.) In *Choate*, the court explicated the impact of section 5—5—4.1:

> "Defendant submits that once he makes an affirmative showing that the sentence imposed by the trial court is erroneous in his particular situation, then the appellate court is authorized to reduce it. We believe this interpretation to be a correct statement of the nature and effect of appellate review under section 5—5—4.1 of the new Illinois sentencing act." (71 Ill. App. 3d 267, 274.)

Despite the seeming adoption of this standard by a majority of the appellate districts in Illinois (see also *People v. Taylor* (1980), 82 Ill. App. 3d 1075, 1077, 403 N.E.2d 607) (dictum), its implementation has been by no means unanimous nor even consistent. See *People v. Oravis* (1980), 81 Ill. App. 3d 717, 720, 402 N.E.2d 297 (Trapp, J., dissenting and objecting to automatic reduction of maximum sentence where given to first-time offender); *People v. Odom* (1980), 82 Ill. App. 3d 853, 403 N.E.2d 297 (Mills, J., specially concurring and applying *Perruquet*); compare *People v. Childers* (1980), 83 Ill. App. 3d 358, 362, 403 N.E.2d 1295 (using both abuse of discretion and rebuttable presumption standards) with *People v. Atnip* (1980), 82 Ill. App. 3d 758, 762, 403 N.E.2d 95 (finding no fatal disparity in sentencing, and sustaining sentence on rebuttable presumption standard) and *People v. Bryant* (1979), 79 Ill. App. 3d 501, 506-07, 398 N.E.2d 941 (weighing mitigating and aggravating factors to determine that presumption was not rebutted) and *People v. Audi* (1979), 73 Ill. App. 3d 568, 571, 392 N.E.2d 248 (reviewing indeterminate sentence under rebuttable presumption standard).

One particular area of dissent has been raised. In *People v. Cox* (1979), 77 Ill. App. 3d 59, 396 N.E.2d 59, Justice Green, in dissent, questioned the legislative preemption of the judicial prerogative of setting standards of review:

> "Although I agree with much that is said in the comprehensive and scholarly majority opinion's analysis of the legislature's intent in enacting section 5—5—4.1 of the Unified Code of Corrections * * *, the precedent of *People ex rel. Stamos v. Jones* (1968), 40 Ill. 2d 62, 237 N.E.2d 495, persuades me that the legislature did not have the power to authorize us to reduce sentences to probation." (77 Ill. App. 3d 59, 74-75.)

In this dissent, Mr. Justice Green was concerned about that portion of section 5—5—4.1 in which the legislature authorized the reviewing court to reduce penitentiary sentences to probation despite an existing Supreme Court Rule which prohibited this practice. (See *People ex rel. Ward v.*

*Moran* (1973), 54 Ill. 2d 552, 556, 301 N.E.2d 300 (construing Supreme Court Rule 615(b)(4)).) Similarly, the portion of 5—5—4.1 which imposes a "rebuttable presumption" rather than the supreme court's existing "abuse of discretion" standard might be subject to constitutional objection analogous to that raised in *Ward*. In *Stamos*, the supreme court struck down a statute enacted by the legislature which contradicted a Supreme Court Rule:

> "[T]he constitution has placed responsibility for rules governing appeal in the Supreme Court, and not in the General Assembly. Because it exceeds the authority granted to the General Assembly by the constitution, section 121—6(b) of the Code of Criminal Procedure is invalid." (*People ex rel. Stamos v. Jones* (1968), 40 Ill. 2d 62, 66.)

Similarly, in *Otis Elevator Co. v. Industrial Com.* (1922), 302 Ill. 90, 134 N.E. 19, the legislature had passed a statute to the effect that the findings of fact made by the Industrial Commission should not be set aside on review by the supreme court unless contrary to the manifest weight of the evidence. The court struck down the proviso, stating:

> "This is an attempt to prescribe a rule governing judicial action and determination and is an usurpation of judicial power. The constitution divides the powers of government into three distinct departments, legislative, executive and judicial, and provides that no person or collection of persons being one of these departments shall exercise any power properly belonging to either of the others, except as therein expressly directed or permitted. Under that division of governmental powers and prohibition *the judiciary cannot instruct the legislature what statutes it shall enact and the legislature can not direct the judiciary how cases shall be decided.*" (Emphasis added.) (*Otis*, 302 Ill. 90, 94.)

(See also Fins, *Impropriety of Illinois Legislature's Infringement Upon the Constitutional Rule-Making Authority of the Supreme Court*, 66 Ill. B.J. 384 (1978); *People v. Valley Steel Products Co.* (1978), 71 Ill. 2d 408, 421, 375 N.E.2d 1297.) Thus the statute has been challenged on two grounds: the purely constitutional basis in *Otis* and the conflicting statute and rule basis set out in *Stamos*.[1] Nevertheless, since the supreme court has granted leave to appeal in two of these sentencing cases under the new statute (*People v. Cox* (1979), 77 Ill. App. 3d 59, 396 N.E.2d 59, *appeal allowed* (1980), 79 Ill. 2d 627; *People v. Meeks* (1979), 75 Ill. App. 3d 357, 393 N.E.2d 1190, *appeal allowed* (1979), 79 Ill. 2d 623), and this issue of constitutionality is squarely presented in each case and is not

---

[1] Although there is no explicit Supreme Court Rule on sentencing scope of review, our supreme court in *Perruquet* apparently interpreted Rule 615(b) to be inclusive of the case law standard of abuse of discretion. See *Perruquet*, 68 Ill. 2d 149, 154.

necessary for resolution of the instant case, a decision on the propriety of application of this statute is more properly left to the supreme court. See *People v. Boyd* (1980), 81 Ill. App. 3d 259, 265-66, 401 N.E.2d 304; *People v. Godinez* (1980), 81 Ill. App. 3d 547, 552, 401 N.E.2d 658 (Stengel, J., dissenting).

In the case at bar we need not decide whether the rebuttable presumption standard of the new act is a substantive change in the level of appellate review as suggested in *Choate* and *Cox*; a procedural narrowing of the extent of appellate jurisdiction to review sentencing decisions; an unconstitutional usurpation of the supreme court's power by the legislature; or merely a legislative codification of the abuse of discretion standard. Rather, under any rendition of the aforementioned standards, defendant's sentence should be affirmed. The weight to be accorded each of the factors in aggravation and mitigation (Ill. Rev. Stat. 1979, ch. 38, pars. 1005—5—3.1, 1005—5—3.2) depends on the circumstances of each case, and the balance struck by the trial court should not be disturbed if supported by the record. (*People v. Piontkowski* (1979), 77 Ill. App. 3d 994, 996, 397 N.E.2d 36.) There is ample evidence in the record that the trial court considered all of the evidence and based its decision on the violence of the offense and the need to deter such serious conduct in the future. The fact that defendant had several character witnesses and would seem to have employment possibilities is not determinative. Similarly, the fact that a defendant is not likely to repeat his failures is a factor to be considered by the trial court, but it is not a conclusive factor. (*People v. Waud* (1977), 69 Ill. 2d 588, 595-96, 373 N.E.2d 1.) The trial court imposed a sentence within the statutory limits and demonstrated by his comments careful consideration of the factors in aggravation and mitigation. Accordingly, there is neither a showing on the record which would rebut the presumptive correctness of the sentence nor is there any evidence which would suggest an abuse of discretion by the sentencing judge.

The sentence of the trial court is affirmed.

Affirmed.

DOWNING and HARTMAN, JJ., concur.