THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOHN TONER, Defendant-Appellant.

First District (5th Division)   No. 62879

Opinion filed December 9, 1977.

Patrick A. Tuite and John T. Theis, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Linda Ann Miller, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

After a bench trial, defendant, who was indicted on three counts of perjury, was found guilty of count III but not guilty of counts I and II and was sentenced to one year conditional discharge with a $500 fine. On appeal, he presents the following issues for review: (1) whether the indictment charged an offense; and (2) whether guilt was proved beyond a reasonable doubt.

He was a Chicago police officer in a special unit assigned to major sporting events and shows. Under a grant of immunity, he was called before the grand jury and was questioned regarding the operations of this unit. Although he was examined concerning the selective enforcement of city ordinances in and around a number of sports stadiums and the receipt of money from motorists, stadium officials, scalpers, vendors, bus drivers, and local businessmen, the recurrent thrust of the inquiry was whether he directly or indirectly received money from parking lot owners whose operations were located near the sports stadiums.

The indictment charged that:

"JOHN C. TONER while testifying under oath before the duly impaneled extended March, 1974 Grand Jury of Cook County, Illinois, a proceeding in which by law such oath is required, made a false statement, material to the issue in question, which statement said JOHN C. TONER did not believe to be true and which said JOHN C. TONER did not admit to be false before the duly impaneled extended March, 1974 Grand Jury of Cook County, Illinois, in violation of Chapter 38, Section 32—2 of the 1973 Illinois Revised Statutes, (to-wit: said JOHN C. TONER gave the following answers to the following questions, knowing said answers to be false regarding money received from parking lot owners:

Q. Do you know what the location of the lot is of 1900 Madison?
A. There was a number of them along the street there, sir.
Q. It would be on the corner of, the north west corner of Madison and Wolcott?
A. Yes sir, I know them.
Q. Did you ever ask the owner of that lot for money?
A. No.
Q. Did you ever take any money from the owner of that lot?
A. No, sir.
Q. Did you ever take any money from an attendant working on that lot?

A. Unless there is some one was repaying some money, I loaned them or something like that * * *."

At trial, George Adrahtas and Gerald Joelson testified that they were co-owners of the lot at 1900 West Madison, and Eugene Renda testified that during the 1971-72 hockey season he had been employed as an attendant at that lot. Each of these witnesses also testified that on many occasions between 1971 and 1973 they had given money to defendant to ensure prompt police protection and that money was never loaned to nor borrowed from defendant.

At trial, defendant testified that he had been a police officer for 28 years and had not been subject to any disciplinary proceedings during that period. He worked the area around the Chicago Stadium for 10 years as a member of the Special Operations group and knew the operators of the various lots in the area, but denied knowing who owned the lot at 1900 West Madison. He never accepted money from parking lot operators, and specifically had never received money from Renda, Adrahtas or Joelson. He denied lying before the grand jury and specifically stated he had told the truth.

Defendant first contends that count III failed to state an offense because it did not describe the matter under grand jury investigation. It is the State's position that since the issue was not specified in defendant's post-trial motion, it is waived for purposes of appeal and, alternatively, that the indictment is legally sufficient.

■■ The failure to specify alleged errors, including those of constitutional import, in a post-trial motion constitutes waiver of those issues, and they cannot be urged as a ground for reversal. (*People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856.) A post-trial motion which "set forth in a general way that defendant did not receive a fair trial and it prayed a new trial upon 'such other grounds and each and every error as may appear from the reporting of the proceedings, the half-sheet, etc.' " has been held to be too vague to raise questions concerning certain evidentiary rulings and the propriety of prosecutorial argument. (*People v. Witherspoon* (1975), 33 Ill. App. 3d 12, 21, 337 N.E.2d 454, 461.) The waiver rule is a salutary one because calling the matter to the attention of the trial court may avoid the delay and expense inherent in an appeal where the motion is meritorious and, should the motion be denied, the judgment and observations of the trial court may be of benefit to the reviewing court. (*People v. Irwin* (1965), 32 Ill. 2d 441, 207 N.E.2d 76.)

"However, the rule has been relaxed where an issue not specified in the motion for a new trial had in fact been brought to the attention of and ruled upon by the trial court and where the accused would have been prejudiced should his contention be established as well-

founded. [Citation.] So, also, even though an issue was not presented to the trial court, plain errors or defects affecting substantial rights may be noticed under Supreme Court Rule 615(a). [Citations.]" *People v. Dees* (1977), 46 Ill. App. 3d 1010, 1018, 361 N.E.2d 1126, 1131-32.

■■ Here, defendant's post-trial motion alleged that "Count III of the indictment is insufficient in law." This is a matter which may be raised for the first time in a post-trial motion. (*People v. Gilmore* (1976), 63 Ill. 2d 23, 344 N.E.2d 456.) While it might have been more appropriately stated as not charging an offense (Ill. Rev. Stat. 1975, ch. 38, par. 114—1(a)(8)), we cannot say that it was so vague that it failed to draw the trial court's attention to the question of materiality. (*Dees; Witherspoon.*) Indeed, the trial court in denying the motion was called upon to determine the legal sufficiency of count III which, of necessity, required the consideration of whether the element of materiality was properly pleaded. (Ill. Rev. Stat. 1975, ch. 38, pars. 32—2, 111—3.) Therefore, we will consider the merits of this issue.

Section 32—2 of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 32—2) provides in pertinent part:

"A person commits perjury when, under oath or affirmation, in a proceeding or in any other matter where by law such oath or affirmation is required, he makes a false statement, material to the issue or point in question, which he does not believe to be true."

The State must plead and prove the materiality of such statements (*People v. Guppy* (1975), 30 Ill. App. 3d 489, 333 N.E.2d 576) as well as knowledge of their falsity at the time of utterance (*People v. Taylor* (1972), 6 Ill. App. 3d 961, 286 N.E.2d 122). Moreover, as the statutory language is general in nature, an indictment couched solely in its terms without supporting factual allegations concerning the means employed in committing the offense is legally insufficient. *People v. Aud* (1972), 52 Ill. 2d 368, 288 N.E.2d 453.

■■ Here, count III, after charging defendant with the offense in statutory language, not only recited the responses alleged to be perjurous but also that such responses were given "knowing said answers to be false regarding money received from parking lot owners." We believe that these factual allegations taken as a whole satisfy the particularity requirements of *Aud* and specifically state the point in question before the grand jury to which defendant's responses were material; *i.e.*, the receipt of money from parking lot owners (*Guppy*). Therefore, to the extent that the denial of defendant's post-trial motion determined count III to be legally sufficient, it cannot be said that the trial court erred.

Defendant next contends that proof of his guilt beyond a reasonable doubt was lacking, in that the State proved neither the materiality nor the

knowing falsity of his utterances. The State's position is that only the materiality aspect of this issue was preserved for review by defendant's post-trial motion and also that he was proved guilty beyond a reasonable doubt.

■■ Whether the State has met its burden of proving the materiality of an alleged false statement is a question of law for the trial court (*People v. Berry* (1923), 309 Ill. 511, 141 N.E. 132) and must be determined in accordance with its relation to some extraneous matter (*People v. Harris* (1968), 102 Ill. App. 2d 335, 242 N.E.2d 782). Therefore, a determination of materiality is dependent upon the admission in the perjury proceeding of so much of the record as will establish beyond a reasonable doubt "the issue or point in question" and its relationship with the allegedly perjurious statements. See *People v. Glenn* (1920), 294 Ill. 333, 128 N.E. 532; *Harris.*

Here, a thorough review of defendant's grand jury testimony, admitted at his perjury trial, reveals that a broad inquiry was conducted into the operations of defendant's unit to determine whether it was practicing selective enforcement of the law in and around major sporting events; whether officers in the unit were receiving money from business enterprises located in and around the sports stadiums whose financial well-being depended upon the crowds drawn by the events; and the relationship, if any, between selective enforcement and such receipt of money. The principal and recurrent theme of the grand jury questioning of defendant was whether directly or indirectly he received money from owners of parking lots in and around sports stadiums.

In our opinion, defendant's grand jury testimony establishes beyond a reasonable doubt that the point in question was the possible receipt of money from such parking lot owners, and it appears to us that defendant's responses to questions concerning the receipt of money from the owners of the 1900 West Madison lot were material to this question. Therefore, we believe the trial court properly found that the materiality of defendant's utterances was proved beyond a reasonable doubt.

■■ We next turn to the consideration of whether a knowing falsity of his answers was proved beyond a reasonable doubt. In this regard, the State maintains that defendant's assertion in his post-trial motion, that the finding is contrary to the law and the evidence, is so general in nature that he waived consideration of the issue as to whether the falsity of his utterances was proved beyond a reasonable doubt. We disagree. Fundamental to our system of criminal justice is the principle that the State must prove every material element of the crime charged beyond a reasonable doubt. (*People v. Tassone* (1968), 41 Ill. 2d 7, 241 N.E.2d 419, *cert. denied* (1969), 394 U.S. 965, 22 L. Ed. 2d 567, 89 S. Ct. 1318.) Consequently, to question whether a conviction is contrary to the law and the evidence would, we believe, direct the trial court's attention to the

issue of whether the knowing falsity of a defendant's response was proved beyond a reasonable doubt. *Irwin; Dees; Witherspoon.*

■■ Proof of the falsity of a response may circumstantially infer knowledge that such was untrue when uttered. (*United States v. Devitt* (7th Cir. 1974), 499 F.2d 135, *cert. denied* (1975), 421 U.S. 975, 44 L. Ed. 2d 466, 95 S. Ct. 1975.) However, such proof is dependent upon the precision with which the examiner questions the accused. (*Bronston v. United States* (1973), 409 U.S. 352, 34 L. Ed. 2d 568, 93 S. Ct. 595.) Moreover, the response must be factually false, as a conviction for perjury will not lie where the accused has merely drawn an erroneous or illogical conclusion. *People v. White* (1974), 59 Ill. 2d 416, 322 N.E.2d 1.

Here, defendant was asked before the grand jury whether he requested or received money from the owner of the lot at 1900 West Madison—to which he replied that he had not. At trial, Adrahtas and Joelson testified that they were the owners of that lot and that they had regularly given defendant money during the course of several ice hockey seasons. We cannot agree with the State that such evidence constituted proof beyond a reasonable doubt that defendant falsely answered the questions regarding receipt of monies from the owners of the 1900 Madison lot. This follows because the State, during the course of the grand jury inquiry, did not identify the owners of the lot nor ask defendant their names. Neither was he asked whether he knew that Adrahtas or Joelson were the owners of that lot. Consequently, defendant's negative response may well have been the result of an erroneous conclusion on his part as to the identity of the lot's owners. (*White.*) Conceivably, he may have believed that some other person was the owner of that lot. Only by implying that at the time of the grand jury inquiry defendant actually knew Adrahtas and Joelson to be the owners in question does the State argue that the responses were knowingly untrue; however, we believe such an implication is unsupported by the record.

Regarding defendant's response to the question inquiring whether he had taken money from the attendant of the lot in question, while an argument can be made that the receipt of money from an employee is material to the issue of whether defendant received money from the employer, the response made by defendant, "Unless there is someone was repaying some money, I loaned them or something like that," is too equivocal to support a perjury conviction (*Bronston*) even where, as here, the attendant testified at trial that on several occasions he gave defendant money, but not in repayment of any loan.

We would note further that the State could have facilitated the grand jury in obtaining truthful responses from defendant or laid the essential ground work for a perjury conviction had it simply been more persistent and precise. It is noted that in the grand jury proceedings, the examiner

asked questions concerning other parking lot owners whose names were specifically mentioned, as follows:

"Q. Have you ever heard of an outfit called the Red Top parking lot?

A. Yes, sir.

Q. Have you ever taken money from the owner of Red Top parking?

A. No, sir.

Q. Do you know who the owner is?

A. Mr. Secor.

Q. Has he ever given you any money?

A. No, sir."

Defendant was also asked whether he received money from Harry Isman and Phillip Scnvkodnow [sic] who were identified as the owners of parking lots at 15 South Wood Street and 1709 Madison, respectively. Here, defendant could have been but was not asked whether he knew the owners of the 1900 West Madison lot; or, more specifically, whether he knew that Adrahtas and Joelson were the owners. Additionally, when defendant made an evasive and non-responsive answer to the "attendant question," the examiner could have rephrased the question or simply pressed for a more direct answer.

For the reasons stated, we believe that proof beyond a reasonable doubt is lacking, and the judgment is reversed.

Reversed.

LORENZ and WILSON, JJ., concur.