THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROBERT L. BOYD, JR., Defendant-Appellant.

Third District   No. 78-443

Opinion filed February 25, 1980.

260

Robert Agostinelli, Thomas Lilien, and Gary R. Garretson, all of State Appellate Defender's Office, of Ottawa, for appellant.

Timothy J. Slavin, State's Attorney, of Morrison (John X. Breslin and Gerry R. Arnold, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE STENGEL delivered the opinion of the court:

Defendant Robert Boyd was convicted by a jury of perjury and sentenced to a term of imprisonment of two years with credit for time served. He appeals from both the conviction and sentence.

At the trial Stewart Opdycke testified that he had been the prosecuting attorney in the case of People v. Wilder tried in March of 1978. In that case he had attempted to prove that Fletcher Wilder murdered Mattie Worthon on September 24, 1976, between 10 p.m. and midnight. Wilder's testimony at that trial raised the alibi defense that he had been in East Moline, Illinois, at the time in question, which was about a 65-minute drive from the scene of the murder. Opdycke stated that Boyd, testifying on Wilder's behalf, said that he had seen Wilder at a gas station on the border between East Moline and Silvis, Illinois, at about 10:30 p.m. on September 24, 1976. Opdycke stated that Boyd testified that he recalled the date because he was on his way to a birthday party when he observed Wilder.

Mark Wilson, a supervisor for Northwestern Steel and Wire in Sterling, Illinois, also testified for the State at Boyd's perjury trial. He said that personnel records of the company indicated that Boyd worked from 2:50 p.m. until 11 p.m. on September 24, 1976. Phyllis Dillard then testified that she had been at a dance with Boyd at the Emerald Hills Country Club near Sterling, Illinois, at about 11:30 p.m. on the date in question. The country club was located about 58 miles from the gas station where defendant claimed to have seen Wilder. Victoria Logan testified that Boyd had called her in March of 1978 to remind her of a party she had attended with him in September of 1976. Logan testified that she could not recall such a party, but that she had attended two parties with defendant in April of 1976.

Defendant, testifying on his own behalf, admitted that at the Wilder trial he testified falsely that he had seen Wilder at the gas station at 10:30

p.m. on September 24, 1976. He stated, however, that at the time he gave the testimony, he believed it to be true. He first had become involved in Wilder's case after reading a newspaper article on the morning of March 23, 1978, dealing with Wilder's whereabouts on the night of September 24, 1976. It occurred to defendant that he had seen Wilder, who had been a fellow employee of defendant's at Northwestern Steel and Wire, at the East Moline gas station at about 10:30 p.m. on that date. According to Boyd, he contacted Wilder's attorneys and testified at trial later the same day. Defendant said that when another witness in the Wilder trial, Bruce Winans, indicated that defendant had been working on the night of September 24, 1976, he began to suspect he had testified falsely.

During cross-examination of defendant at his perjury trial, the State elicited the fact that defendant testified a second time at the Wilder trial, after Winans testified, and defendant persisted in his testimony that he had seen Wilder at the gas station at 10:30 p.m. on the date in question. He also said that on more than one occasion he had left work early, having another employee punch out for him. At his perjury trial defendant stated that he did not leave work early on September 24, 1976, and that he could not recall having someone punch out for him. The indictment charging Boyd alleged only that he had perjured himself the first time he testified at the Wilder trial, not the second time.

The defense was subsequently precluded from introducing the testimony of defendant and Ana Harris that after Winans testified at the Wilder trial, Boyd indicated to one of Wilder's attorneys that he might have testified falsely. According to this testimony, Wilder's attorney then told defendant not to change his testimony.

After Boyd was found guilty, at the sentencing hearing the trial court denied him probation, indicating that to do otherwise would deprecate the seriousness of the offense.

■■ Defendant's first contention is that he was not proved guilty beyond a reasonable doubt. An essential element of the crime of perjury is knowledge of the falsity of the statements at the time of their utterance. (Ill. Rev. Stat. 1977, ch. 38, par. 32—2(a); *People v. Taylor* (1972), 6 Ill. App. 3d·961, 286 N.E.2d 122.) Defendant acknowledges that such knowledge may be inferred from proof that the statements were in fact false (*People v. Toner* (1977), 55 Ill. App. 3d 688, 694, 371 N.E.2d 270), but maintains that such an inference cannot support a conviction in the instant case because he gave a reasonable explanation for the false testimony consistent with his innocence.

We find this argument unpersuasive. A reviewing court may not substitute its judgment for that of the trier of fact on questions involving the weight of the evidence, and should not reverse a conviction unless the evidence is so improbable as to raise a reasonable doubt of guilt. (*People*

*v. Manion* (1977), 67 Ill. 2d 564, 367 N.E.2d 1313.) Under the circumstances of this case, defendant's explanation for the false testimony did not raise such a reasonable doubt. At the outset we note the improbability that, upon reading the article, defendant would have a detailed memory of a chance observation of Wilder a year and a half earlier when, in fact, it did not take place. More specifically, we note the improbability that defendant would mistakenly remember the date of the birthday party he attended with Victoria Logan was September 24, when, at his trial, defendant testified that it was "in April or maybe after that." Finally, defendant's assertion that he believed his false testimony to be true at the time he gave it was discredited by his admission on cross-examination that he persisted in his false testimony even after he heard the testimony of Winans indicating that he had been at work on the evening of September 24, 1976.

Another essential element of the crime of perjury is that the statements be factually false and not merely erroneous and illogical conclusions. (*People v. Toner* (1977), 55 Ill. App. 3d 688, 371 N.E.2d 270.) Defendant contends that the State failed to prove that his false testimony was not merely an erroneous conclusion on his part. However, there is no evidence in the record tending to show that Boyd's statement could have been an erroneous conclusion based on a mistaken belief. Boyd testified quite simply that he had seen Wilder at a gas station near the border between East Moline and Silvis at about 10:30 p.m. on September 24, 1976, and the jury found that he had not.

Defendant's next contention is that the trial court should have given the jury an instruction explaining the limited purpose for which evidence was introduced concerning the second time he testified at the Wilder trial. This evidence included defendant's admission on cross-examination that when he testified the second time, he falsely stated that on more than one occasion he left work early and had another employee punch out for him. This evidence was admitted for the limited purpose of rebutting defendant's assertion that when he testified the first time at the Wilder trial, he believed his testimony to be true, by showing that even after he heard Winans' testimony he persisted in his false testimony. Defendant maintains that without a proper limiting instruction the jury could have improperly convicted him of perjuring himself the second time he testified, a crime with which he was not charged.

Defendant neither requested the court to give a limiting instruction at the time this evidence was introduced, nor tendered such an instruction at the instructions conference. This issue was not raised in his post-trial motion, and the general rule is that under such circumstances, the issue is considered waived. (*People v. Roberts* (1979), 75 Ill. 2d 1, 387 N.E.2d 331.) Defendant, however, urges us to consider the issue pursuant to

Supreme Court Rule 451(c) which provides that substantial defects are not waived if the interests of justice require. Ill. Rev. Stat. 1977, ch. 110A, par. 451(c).

■■■ In *People v. Roberts* (1979), 75 Ill. 2d 1, 387 N.E.2d 331, the Illinois Supreme Court reiterated that the Rule 451(c) exception to the waiver rule is a limited exception to be used to correct grave errors, or to be applied where the case is close factually and fundamental fairness requires that the jury be properly instructed. This case was not particularly close factually, and in closing arguments both the defense counsel and the prosecutor indicated that the issue to be decided was whether defendant perjured himself the first time he testified at the Wilder trial. Under these circumstances it cannot be said that the absence of a proper limiting instruction deprived defendant of a fair and impartial trial. We consider the issue waived.

Defendant's next argument is that the trial court erred in excluding as irrelevant the testimony of defendant and Ana Harris that after Winans testified at the Wilder trial, defendant indicated to one of Wilder's attorneys that his testimony might have been false, and that the attorney told defendant not to change his story. He maintains that such testimony was relevant in that it tended to rebut the State's argument that the fact that defendant persisted in his false testimony after hearing Winans indicated his intention to lie throughout the Wilder trial.

■■ Evidence is relevant if it tends to prove a disputed fact or render the matter in issue more or less probable in light of logic, experience, and accepted assumptions of behavior. (*People v. Gardner* (1977), 47 Ill. App. 3d 529, 362 N.E.2d 14.) Whether evidence proffered by a defendant is relevant is a question addressed to the sound discretion of the trial court. (*Gardner.*) The trial court may reject evidence which it determines to be of little probative value because of its remoteness, uncertainty, or conjectural nature. (*Gardner.*) The probative value of the proffered testimony with respect to the question of whether defendant believed his first testimony to be true at the time he gave it is not so significant that the trial court's ruling amounted to an abuse of discretion.

Defendant's next argument is that the trial court improperly admitted evidence that the Wilder trial was a murder trial at which the jury was unable to reach a verdict. Defendant did not object at trial to the admission of such evidence, nor did he raise the issue in his post-trial motion. Consequently, the issue has been waived. (*People v. Hoover* (1978), 55 Ill. App. 3d 895, 371 N.E.2d 371.) Defendant urges this court to consider the issue pursuant to Supreme Court Rule 615(a) which provides, in part, "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." (Ill. Rev. Stat. 1977, ch. 110A, par. 615(a).) As noted above, the

evidence of defendant's guilt was not closely balanced. Furthermore, the admission of this evidence, if error at all, was not so grave an error as to deprive defendant of a fair trial. Accordingly, we decline to consider this issue. See *People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856.

Following defendant's conviction, the court ordered a presentence investigation report prepared. After various witnesses had testified at the sentencing hearing, and the parties had presented arguments, the trial court stated:

> "In this case the defendant has been found guilty of committing perjury in a murder trial. The Court considers this a most serious offense in that an accused murderer's alibi defense was cooberated [*sic*] by the false testimony of the defendant. To grant probation would deprecate the seriousness of the crime."

The court then sentenced defendant as indicated above.

Section 5—6—1(a) of the Unified Code of Corrections provides:

> "Except where specifically prohibited by other provisions of this Code, the court shall impose a sentence of probation or conditional discharge upon an offender unless, having regard to the nature and circumstance of the offense, and to the history, character and condition of the offender, the court is of the opinion that: (1) his imprisonment or periodic imprisonment is necessary for the protection of the public; or (2) probation or conditional discharge would deprecate the seriousness of the offender's conduct and would be inconsistent with the ends of justice." (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005—6—1(a).)

Section 5—4—1(c) of that Code provides, in part:

> "In imposing a sentence for a felony, the trial judge shall specify on the record the particular evidence, information, factors in mitigation and aggravation or other reasons that led to his sentencing determination." (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005—4—1(c).)

In light of these provisions, defendant maintains that his sentence must be vacated because the trial court, in denying him probation on the basis of section 5—6—1(a)(2), did not explicitly state *both* that probation would deprecate the seriousness of the offender's conduct, *and* that it would be inconsistent with the ends of justice.

We do not think that the requirement of section 5—4—1(c) that the trial court state its reasons for imposing a particular sentence should be applied so rigorously. Although the trial court must sentence the defendant according to the provisions of section 5—6—1(a), we do not think that the propriety of a particular sentence should depend on the incantation of those provisions by the trial court.

Defendant also maintains that the trial court erred in denying him

probation. Citing *People v. Choate* (1979), 71 Ill. App. 3d 267, 389 N.E.2d 670, and *People v. Cox* (1979), 77 Ill. App. 3d 59, 396 N.E.2d 59, he argues that under the "new" sentencing law pursuant to which he was sentenced, appellate courts have a broader power to modify sentences than they did under the "old" law. More specifically, he contends that the standard of review is no longer whether the trial court abused its discretion in sentencing. Rather, he maintains, a sentence should be reduced if the defendant "makes an affirmative showing that the trial court's sentence is erroneous."

Since 1977, the new Unified Code of Corrections, under section 5—5—4.1, purports to set a standard for appellate review of sentences imposed under the Unified Code by stating that "there is a rebuttable presumption that the sentence imposed by the trial judge is proper."

We recognize several decisions have considered this legislative revision, the first being *People v. Choate* (5th Dist. 1979), 71 Ill. App. 3d 267, 389 N.E.2d 670. In *Choate*, that court held:

> "Defendant submits that once he makes an affirmative showing that the sentence imposed by the trial court is erroneous in his particular situation, then the appellate court is authorized to reduce it. We believe this interpretation to be a correct statement of the nature and effect of appellate review under section 5—5—4.1 of the new Illinois sentencing act." 71 Ill. App. 3d 267, 274, 389 N.E.2d 670, 676.

A similar case was considered in *People v. Cox* (4th Dist. 1979), 77 Ill. App. 3d 59, 396 N.E.2d 59, with a well-considered dissent by Justice Green. He questioned the legislature's right to enact section 5—5—4.1, saying:

> "[T]he precedent of *People ex rel. Stamos v. Jones* (1968), 40 Ill. 2d 62, 237 N.E.2d 495, persuades me that the legislature did not have the power to authorize us to reduce sentences to probation." 77 Ill. App. 3d 59, 75.

In *Stamos*, the supreme court was considering section 121—6(b) of the Code of Criminal Procedure that prohibited bail pending appeal on convictions of forcible felonies. Although this section was being interpreted in relation to the 1870 Constitution, Justice Schaefer stated:

> "[T]he constitution has placed responsibility for rules governing appeal in the Supreme Court, and not in the General Assembly. Because it exceeds the authority granted to the General Assembly by the constitution, section 121—6(b) of the Code of Criminal Procedure is invalid." 40 Ill. 2d 62, 66.

This important issue is now before the supreme court in granting leave to appeal in *People v. Meeks* (5th Dist. 1979), 75 Ill. App. 3d 357, 393 N.E.2d 1190, *appeal allowed* (1979), 79 Ill. 2d 623. We believe it best to

delay consideration of this issue, but here we need not decide whether *Choate* and *Cox* correctly define the standard of appellate review under the new law; for it is clear that, even under that more liberal standard, defendant's sentence would be affirmed.

In discussing the standard of review, the court in *Cox* stated:

"The standard of such appellate presumptions directs the reviewing court to indulge in every reasonable intendment favorable to a ruling of the court below and, in the absence of an affirmative showing to the contrary, to presume that the ruling of the court was properly made and for sound reasons." (77 Ill. App. 3d 59, 64, 396 N.E.2d 59, 64.)

In the instant case defendant had two prior criminal convictions, one for battery and one for disorderly conduct. Although the evidence concerning his employment record was conflicting, we note that some of it reflected unfavorably on his character. Under these circumstances defendant has not made an affirmative showing that the sentence was erroneous under section 5—6—1(a).

For the reasons stated, the conviction and sentence entered by the Circuit Court of Whiteside County are affirmed.

Affirmed.

ALLOY and SCOTT, JJ., concur.