THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LESTER SCHAEFFER, Defendant-Appellant.

First District (1st Division)　No. 80-244

Opinion filed August 17, 1981.

James J. Doherty, Public Defender, of Chicago (Thomas Finegan and Richard E. Gade, Assistant Public Defenders, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Marcia B. Orr and Kathleen Warnick, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE McGLOON delivered the opinion of the court:

Defendant was charged with armed robbery, armed violence, aggravated battery and attempt murder. After a jury trial, he was found guilty of armed robbery, armed violence and aggravated battery. He was

sentenced to 20 years' imprisonment for armed robbery, 7 years for armed violence and 5 years for aggravated battery. The terms were to run concurrently. Defendant now appeals.

On appeal, defendant argues that (1) the admission into evidence of a mug shot constituted reversible error; (2) an element of the charge of armed robbery was improperly proved by the State; (3) the trial court erred in denying defendant's motion for a continuance; and (4) improper comments by the prosecutors during trial and closing argument deprived defendant of a fair trial.

We affirm.

At 5 p.m. on October 9, 1978, George Jennette went to the Showcase Lounge for a drink. Jennette had been in the lounge for approximately 20 minutes when he was joined by Eugene Felder, whom he had known for 10 years. Felder noticed that an acquaintance of his, Lester Schaeffer (defendant), was present in the bar. Felder introduced defendant to Jennette. The three men talked and drank together for about an hour.

After leaving the lounge, the three sat in Jennette's car, a black Buick Electra, for about one-half hour. Felder sat in the driver's seat, Jennette in the passenger's seat and defendant in the back. The men decided to drink more, so Felder left the car to purchase a half-pint of bourbon at a nearby package store.

Different accounts were given of the sequence of events that followed. Defendant testified that Jennette had fallen asleep while the three were in the car together. When Jennette awoke, he asked defendant where Felder had gone. Defendant replied that Felder had gone to buy liquor. Jennette told defendant to forget about Felder and to drive him home. Defendant followed Jennette's instructions. Jennette slept en route and was awakened by defendant when they arrived at Jennette's home on 103d Place in Chicago. After Jennette assured defendant that he would be able to make it into his house alone, defendant left.

Jennette testified that he had been dozing, but that he woke up when defendant asked Felder if he wanted another drink. After Felder got out of the car, defendant moved into the driver's seat, started the engine and pulled away. When Jennette asked whether they were going to wait for Felder, defendant hit him in the head with a hammer. Jennette remembered little of what happened after he was hit, but said that he thought he was beaten for an extended period of time. He did not recall being taken to the hospital or being questioned by anyone that night.

Additionally, Jennette testified that he had $150 in his wallet both when he was in the lounge and when the three were sitting in his car. He discovered that his wallet was missing while he was in the hospital. On October 12, three days after he had been attacked, Jennette identified defendant as his assailant.

Barbara Johnson testified that on the night of October 9 at around 9:20 p.m. she was walking to her car on 103d Place near where Jennette lived when she noticed a black Buick Electra parked across the street. A 1978 light green Chevrolet Impala pulled alongside the Buick and the driver of the Impala honked. She saw a black male get out of the Buick and into the Impala. As the interior lights of the Impala went on, she saw that the driver was an older-looking, heavy set black woman with blondish-gray hair pulled back into a bun.

Investigator Robert McGuire testified that Felder informed him that he had been with Jennette and defendant the previous night. McGuire proceeded to defendant's home looking for defendant and the 1978 Impala which had been seen by Miss Johnson the previous night. Parked in front of defendant's home was a 1978 light green Chevrolet Caprice. McGuire checked the registration and found that the vehicle was registered to defendant's wife. McGuire then went to defendant's home. A woman answered the door and informed McGuire that defendant was not home. That woman fit the description of the female driver of the Impala seen by Barbara Johnson.

Defendant was arrested while driving near his home on October 12. The arresting officer asked him for the clothing he had worn on October 9. Defendant sent his wife to retrieve the clothing and when she returned, defendant was being put in the squad car. Mrs. Schaeffer began screaming and trying to pull defendant out of the squad. She asked what the charges were against her husband. The officer replied that defendant was being charged with the aggravated battery and armed robbery of George Jennette. Mrs. Schaeffer then exclaimed "that son of a bitch was drunk and only had eight dollars on him!"

Jennette also testified that prior to trial he had spoken with defendant on the telephone. Defendant reportedly asked Jennette to drop the charges, stating that he did not know what made him act the way he did and that he had never done anything like that before. Jennette told defendant that he would consider defendant's request. When defendant called Jennette back the following week Jennette refused to speak with defendant.

Defendant pleaded not guilty and demanded a jury trial. The jury returned verdicts of guilty on charges of armed robbery, aggravated battery and armed violence. The court sentenced defendant to concurrent terms of 20 years for armed robbery, 7 years for armed violence and 5 years for aggravated battery.

First, defendant contends that the trial court erred in admitting into evidence a mug shot of defendant. During opening remarks, the prosecutor informed the jury that the State's witness Felder had identified a photograph of defendant which had been obtained from "Chicago Police

Department Records." Before the mug shot was introduced into evidence, the officer who had shown Felder the photo testified that the photo came from "1121 South State Street, Bureau of Identification." The mug shot and the references to it, defendant claims, suggested to the jury that defendant previously had engaged in criminal conduct. As a result, he was compelled to take the stand. On direct examination, defendant admitted that he had been convicted of burglary in 1975.

The State urges that the admission into evidence and reference to the mug shot did not necessarily imply that defendant previously had been arrested. Rather, the Chicago Police Department could have had defendant's photograph because he had been the victim of a crime or had applied for a job with the police department. We find this argument by the State unconvincing.

Alternatively, the State asserts that any error committed in admitting the photo into evidence was harmless in light of the overwhelming evidence of guilt adduced at trial. In *People v. Warmack* (1980), 83 Ill. 2d 112, 413 N.E.2d 1254, our supreme court held that the trial court erred in admitting the mug shot of defendant bearing an arrest date prior to the offense in question. The supreme court found, however, that the error was harmless in view of the abundant evidence against the defendant. 83 Ill. 2d 112, 128.

■■ Similarly, the evidence against defendant in the case at bar was abundant. We hesitate to characterize this or any error as "harmless." We believe, however, that even if the source of the photograph had never been mentioned, the jury would have returned the same verdict. Thus, we do not believe that the admission into evidence of the mug shot constituted reversible error.

Second, defendant contends that an element of the charge of armed robbery was improperly proved by the State during redirect examination. More specifically, he argues that the prosecutor asked Jennette a leading question which assumed a fact not in evidence. On cross-examination, Jennette testified that he checked his wallet before entering the lounge and again while in the car with defendant and Felder and that his wallet contained $150 both times he checked. On redirect, the following exchange occurred between the prosecutor and Jennette:

> "Q. When you were sitting in your car and when defendant pulled off you said you had a wallet in your pocket with $150?
> A. Right."

Defendant claims that the prosecutor's elicitation of his affirmative response amounted to the prosecutor's unsworn testimony. Had the State not elicited this response, defendant argues, the State would not have proved the offense of armed robbery beyond a reasonable doubt.

■■ We note that defendant neither objected to the question during trial nor alleged the error in his motion for a new trial. Defendant, therefore, technically has waived this issue on appeal. (See *People v. Boyd* (1980), 81 Ill. App. 3d 259, 401 N.E.2d 304; *People v. Boyce* (1977), 51 Ill. App. 3d 549, 366 N.E.2d 914.) Moreover, we believe that defendant's claim is based on a misinterpretation of the question which was asked on redirect. Defense counsel reads the question to mean that Jennette told defendant he had $150 in his pocket. We believe, however, that when the prosecutor asked Jennette if he had stated he had $150 in his wallet, he was referring to Jennette's statement during cross-examination and not to a statement Jennette had made to defendant while in the automobile. It appears that the prosecutor merely was attempting to clarify the testimony given by Jennette during cross-examination by defense counsel.

Third, defendant argues that the trial court erred in denying defendant's motion for a continuance to secure the testimony of a defense witness. Defendant believes that the testimony of Grace Van Lange would have substantially impeached the testimony of the victim. Van Lange had been subpoenaed to testify. She, however, became seriously ill and was unable to appear in court. The trial court ruled that due to the uncertainty of Van Lange's future availability, a continuance was unworkable.

Van Lange worked as a nurse in the emergency room of the hospital where Jennette was brought after he had been attacked. She interviewed Jennette upon his arrival at the hospital. According to defendant, Jennette told Van Lange that "he didn't remember exactly what happened to him, but did state that he remembered being jumped by an unknown number of persons."

When reviewing a trial court's decision to deny a continuance for the purpose of obtaining additional evidence, the reviewing court may consider, among other things, whether the evidence would be material to the case and might affect its outcome, and whether defendant has been prejudiced in his right to a fair trial. (See *People v. Timms* (1978), 59 Ill. App. 3d 129, 375 N.E.2d 1321.) The trial court's ruling on the motion will not be disturbed on appeal without a showing of a clear abuse of discretion. See *People v. Rivera* (1978), 64 Ill. App. 3d 49, 380 N.E.2d 1018.

■■ We seriously question the import of the testimony Van Lange supposedly was prepared to give. Had the testimony been given, it would have in no way exculpated defendant. The statement allegedly made by Jennette was extremely vague. Additionally, Van Lange was questioning Jennette in order to treat him and not to ascertain the identity of his assailant. Furthermore, we do not believe that the testimony would have changed the outcome of the case. If Jennette's testimony were the sole

evidence of defendant's involvement in the crime, we might be more inclined to find that a continuance should have been granted. However, the inculpating evidence against defendant was abundant. We find, therefore, that the trial court's denial of the motion for continuance was not an abuse of discretion.

■■ Lastly, defendant urges that certain improper comments made by the prosecutors during trial and closing argument prejudiced the jury against defendant and thereby deprived defendant of his right to a fair trial. Although some of these comments were ostensibly improper, they were not so seriously prejudicial that a reversal would be appropriate. Further, we cannot say that the prosecutors' comments represented a material factor in defendant's conviction or that the verdict would have been different had the comments not been made. See *People v. Nicholls* (1969), 42 Ill. 2d 91, 245 N.E.2d 771.

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

Judgment affirmed.

GOLDBERG and O'CONNOR, JJ., concur.