THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RICHARD BAINTER, Defendant-Appellant.

Third District    No. 81-207

Opinion filed December 31, 1981.

Robert Agostinelli and Stephen Omolecki, both of State Appellate Defender's Office, of Ottawa, for appellant.

Thomas J. Homer, State's Attorney, of Lewistown (John X. Breslin and Gerry R. Arnold, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE STOUDER delivered the opinion of the court:

The defendant, Richard Bainter, was convicted of theft of property having a value in excess of $150 following a jury trial in the circuit court of Fulton County. On appeal, he raises the following issues: (1) whether his attorney labored under a *per se* conflict of interest where defense counsel had previously represented the State's chief witness in a prosecution for the same offense; (2) whether the defendant effectively waived any such conflict; (3) whether the allegedly improper comments by the prosecutor during closing argument denied the defendant a fair trial; and (4) whether the trial court committed reversible error in allowing the prosecutor to elicit testimony during direct examination from State's witness John Ramey regarding Ramey's conviction of burglary for his participation in the offense with which the defendant was charged, and whether the prosecutor enhanced this alleged error during closing argument by suggesting that the jurors could consider Ramey's guilty plea in their deliberations on the defendant's guilt or innocence.

A resolution of these issues requires only a brief summation of the factual basis for the defendant's conviction. On the morning of November

21, 1980, the defendant went hunting with two friends, Jon Stone and John Ramey. As the three friends were riding in Stone's automobile, the conversation turned to the subject of a young man named Timothy Peters, and the fact that he had some furs. Eventually, the three friends decided to steal the furs. They removed the furs from a freezer located in the Peters' garage after Ramey pried open the freezer with a screwdriver. Whether the defendant entered the garage to assist with the removal of the furs was a question open to dispute at trial.

Following a removal of the furs from the garage, the three young men took the furs to the defendant's house and counted them. Later that evening, the furs were taken to the Perardi Fur Company in Farmington, Illinois. All of the furs were sold, with the exception of one fox fur, for a total price of $206. The defendant received one-third of the money. The fox fur, which was not sold, was later returned to Timothy Peters by the defendant, who put the fur in Peters' truck while the truck was parked at the high school.

The defendant's retained attorney at trial was William C. Davis. Attorney Davis had previously represented John Ramey, the State's chief witness at the defendant's trial, when Ramey pleaded guilty to a charge of burglary arising from the same incident as that giving rise to the defendant's conviction.

The defendant contends that this dual representation created a *per se* conflict of interest for his attorney and thus deprived him of his constitutional right to the effective assistance of counsel. He further contends that he did not effect a knowing and intelligent waiver of this alleged conflict of interest.

■■ Preliminarily, we note that the defendant failed to include the conflict of interest issue in his post-trial motion. This omission does not prevent the defendant from raising the issue on appeal, since there was no post-trial review by an independent attorney and defendant's trial counsel could hardly have been expected to include the issue in a post-trial motion since it is clear that he thought no conflict existed. *People v. Arreguin* (1981), 92 Ill. App. 3d 899, 416 N.E.2d 402; *People v. Mathes* (1979), 69 Ill. App. 3d 275, 387 N.E.2d 39.

Following a careful review of the colloquy which occurred immediately prior to jury selection between the defendant and the trial judge concerning the possibility of a conflict of interest on the part of the defendant's counsel, we determine that the defendant knowingly waived any potential conflict. We make this determination without reaching the merits of the conflict issue and, therefore, withhold judgment on the question of whether a *per se* conflict or an actual conflict of interest existed.

■■ An accused has the unquestioned privilege to waive his right to counsel free from conflicting interests. (*People v. Johnson* (1979), 75 Ill. 2d 180, 387 N.E.2d 688; *People v. Friedrich* (1960), 20 Ill. 2d 240, 169 N.E.2d 752.) The following discussion represents a proper and unequivocal exercise of that privilege by the defendant in this case:

"BY THE COURT: * * * Mr. Bainter, did you know that Mr. Davis [the defendant's retained counsel] represented Mr. Ramey [the People's witness]?

BY MR. BAINTER: Yes, sir.

BY THE COURT: And you understand he, of course, is now representing you?

BY MR. BAINTER: Yes, sir.

BY THE COURT: Do you have any problem with the fact that if Mr. Ramey testifies here and Mr. Davis has previously represented him that there could be some conflict of interest present by reason of that fact?

BY MR. BAINTER: No, sir.

BY THE COURT: There is, Mr. Bainter, the possibility that, and I'm speaking in terms of mere possibility. [*Sic.*] There is always the concern of the court and the reviewing court that because of some prior representation of a co-defendant here that there may be that subconscious element creep into, for example, the cross examination of Mr. Ramey by your attorney where he might not be as thorough as he would otherwise be had he not previously represented Mr. Ramey. Does that cause you any alarm or concern?

BY MR. BAINTER: No, sir.

BY THE COURT: Mr. Davis, do you foresee any conflict of interest with respect to this matter?

BY MR. DAVIS: No, sir, I don't—not at this time.

BY THE COURT: Mr. Danner [the assistant state's attorney]?

BY MR. DANNER: You Honor, what I might bring to the Court's attention is that there, Mr. Davis would be allowed to represent Mr. Bainter in this proceeding, there could be an infringement of the attorney/client privilege with Mr. Ramey—disposing [*sic*] confidences and things of this nature—which gives me some reason for concern.

BY THE COURT: Mr. Davis?

BY MR. DAVIS: Your Honor, there is always that possibility that things may be brought out in direct that may have, I may have knowledge different in my conversations with him while I represented him, and to that extent I may be able to turn that to my advantage or the vantage [*sic*] of my present client. At this point I can think of nothing, but during a trial, things are said; sometimes it

comes as a surprise to Counsel. The testimony isn't always as we anticipate.

BY THE COURT: Well, it's unfortunate that this has to be the problem of the Court, but we will proceed here. * * *"

It is clear from the defendant's responses that he wanted his retained attorney to continue representing him. He knew that his retained counsel had previously represented State's witness, John Ramey, and he informed the court that any conflict of interest presented by that fact would not trouble him. In addition, he was not concerned that his attorney might be subconsciously influenced in his cross-examination of Ramey by his prior representation of Ramey.

The defendant's argument that his waiver of the alleged conflict was inadequate because the trial judge failed to follow the procedure outlined in Federal Rule of Criminal Procedure 11 and espoused in *United States v. Alvarez* (5th Cir. 1978), 580 F. 2d 1251, and *United States v. Garcia* (5th Cir. 1975), 517 F. 2d 272, whereby a defendant's knowing and intelligent waiver of certain constitutional rights by virtue of a guilty plea are manifested in the record, does not persuade. As the defendant admits, Illinois courts have not yet expressly adopted the procedure espoused in *Alvarez, Garcia* and their progeny. (See also Tigar, *Forward: Waiver of Constitutional Rights: Disquiet in the Citadel*, 84 Harv. L. Rev. 1, 23-24 (1970).) We find that the trial judge's questions and admonishments and the defendant's responses on the conflict issue clearly establish a waiver of any possible conflict. The court properly proceeded with the defendant's trial.

The defendant next asserts that he was denied a fair trial, because the prosecutor allegedly made improper comments during closing argument. Only one of these comments, an allegedly improper suggestion to the jury that they consider the guilty plea of the defendant's accomplice, John Ramey, as evidence of the defendant's guilt, was raised in the defendant's post-trial motion. The failure of the defendant to raise the other comments in his post-trial motion has waived those issues for purposes of appeal. *People v. Gordon* (1981), 94 Ill. App. 3d 764, 419 N.E.2d 66; *People v. Garza* (1981), 92 Ill. App. 3d 723, 415 N.E.2d 1328.

We have examined each of the allegedly improper comments carefully and, while we don't approve of them and hope they are not repeated by the prosecutor in subsequent cases, we find they do not fall under the plain error exception to the waiver rule. The application of the plain error doctrine should be limited to situations where the alleged errors are grave or where the case is close factually. (*People v. Roberts* (1979), 75 Ill. 2d 1, 387 N.E.2d 331; *People v. Boyd* (1980), 81 Ill. App. 3d 259, 401 N.E.2d 304.) The errors complained of in the present case were not grave nor was the case close factually. The defendant's taped confession was played for

the jury, and the defendant was fully implicated by the testimony of his accomplice, John Ramey.

The one allegedly improper prosecutorial comment preserved on appeal by its inclusion in the defendant's post-trial motion involved the following language:

"\* \* \* John Ramey came in and he made a statement today. As you were made aware from the Miranda card, the Defendant or a suspect in a crime has the right not to make a statement. Apparently Mr. Ramey chose to exercise his constitutional right not to make a statement when he was arrested, but you also know that Mr. Ramey, a month or so down the road, made the decision to come into court and to plead guilty to this offense; and that is a loud and clear statement of what he thinks of his activities that evening and a loud and clear statement of what happened there on November 21, 1980, at the Bainter and Sumate residence.

And I submit to you why should you believe Bainter any more than you do Ramey? They are both out there. They are both committing a burglary. They are both committing a theft over $150, and they are both committing criminal damage to property.

Why is Richard Bainter supposed to be believed any more than John Ramey, and I submit to you that there is absolutely no basis for you to place more credibility on what Bainter said on that taped statement than what John Ramey did here on this stand."

This language is clearly and correctly labelled by the defendant as erroneous. Admissions by co-defendants are generally inadmissible against an accused. (*People v. Clark* (1972), 50 Ill. 2d 292, 278 N.E.2d 782; *People v. Tyner* (1964), 30 Ill. 2d 101, 195 N.E.2d 675.) It is improper for a prosecutor to suggest to the jury during closing argument that a co-defendant's guilty plea can be considered as evidence of the defendant's guilt. (*People v. Sullivan* (1978), 72 Ill. 2d 36, 377 N.E.2d 17.) The State's contention that the prosecutor's remarks merely argued the weight which the jury should attach to the defendant's taped confession as compared with John Ramey's testimony is arguable.

■■ The prosecutor's comments regarding Ramey's guilty plea as evidence of the defendant's guilt constituted error. However, in light of the overwhelming evidence of the defendant's guilt, the error was harmless.

The defendant's final argument is that the prosecutor committed error during his direct examination of John Ramey by eliciting testimony that Ramey was convicted on a burglary charge arising from the same occurrence, and that the prosecutor compounded this error during closing argument by suggesting that the jurors could consider Ramey's guilty plea in their deliberation on the defendant's guilt or innocence. It is debatable whether, under the facts of this case, the prosecutor's examination of

Ramey constituted error. However, any error committed was harmless in light of the overwhelming evidence against the defendant.

Witness Ramey testified fully regarding his participation in the offense. He stated that he, Jon Stone and the defendant committed the crimes with which the defendant was charged. Therefore, the following exchange between the prosecutor and Ramey could not have prejudiced the defendant:

> "Q Now, Mr. Ramey, you were charged with burglary for this occasion, weren't you?
>
> A Yes.
>
> Q And have you been sentenced on that case yet?
>
> A Yes."

The defendant himself, on cross-examination, elicited the only testimony revealing to the jury that Ramey had been convicted by his pleading guilty to the burglary charge.

The prosecutor's contested comments during closing argument responded to defense counsel's argument that Ramey was not a credible witness. During rebuttal argument, the prosecutor stated as follows:

> "Now, I want you to look at Ramey's testimony for a little bit. As Attorney Davis pointed out to you, Mr. Ramey says, 'I don't like Tim Peters [the victim].' Now, if he doesn't like Tim Peters, why is he coming in here and testifying against Richard Bainter? If he doesn't like Tim Peters, he is going to say, 'Hey, I'm going to go in and spring my buddy Bainter and Peters is not going to recover all of his money,' and that's absolutely incredible.
>
> No, John Ramey came in and he made a statement today. As you were made aware from the Miranda card, the Defendant or a suspect in a crime has the right not to make a statement. Apparently Mr. Ramey chose to exercise his constitutional right not to make a statement when he was arrested, but you also know that Mr. Ramey, a month or so down the road, made the decision to come into court and to plead guilty to this offense; and that is a loud and clear statement of what he thinks of his activities that evening and a loud and clear statement of what happened there on November 21, 1980, at the Bainter and Shumate residence.
>
> And I submit to you why should you believe Bainter any more than you do Ramey? They are both out there. They are both committing a burglary. They are both committing a theft over $150, and they are both committing criminal damage to property.
>
> Why is Richard Bainter supposed to be believed any more than John Ramey, and I submit to you there is absolutely no basis for you to place more credibility on what Bainter said on that taped statement than what John Ramey did here on this stand."

We find the prosecutor's direct examination of Ramey arguably within permissible guidelines, despite the holding announced by the Illinois Supreme Court in *People v. Sullivan* (1978), 72 Ill. 2d 36, 377 N.E.2d 17, and upon which the defendant relies. In *Sullivan*, our supreme court held that it is reversible error for a trial court to allow an accomplice to testify that he has pleaded guilty to an offense and for a prosecutor subsequently to suggest in closing argument that the jurors could consider such evidence in deciding the defendant's guilt or innocence.

The case at bar is distinguishable from *Sullivan*. In that case, the prosecution called the defendant's two alleged accomplices as witnesses. One of the accomplices refused to testify. The other testified that he was serving a sentence for the armed robbery of a liquor store in Meredosia, the site of the armed robbery in question, and that he was with the defendant on May 29, 1975, the date in question, when they drove to Meredosia. The witness refused to testify further.

The prosecutor in *Sullivan* admitted to the jury during his closing argument that all of the evidence implicating the defendant was circumstantial. He pointed out that both accomplices had pleaded guilty to the armed robbery charge and argued that the defendant was equally guilty.

The case at bar, where the accomplice testified in detail concerning the taking of the furs and their subsequent sale by himself, the defendant and a third party, is more clearly analogous to *People v. Baker* (1959), 16 Ill. 2d 364, 158 N.E.2d 1, an earlier Illinois Supreme Court opinion in which the court found no reversible error where a co-defendant's guilty plea or confession to the same crime for which the defendant stood trial was disclosed to the jury. *Baker* was distinguished by the court in *Sullivan* as follows:

> "In *People v. Baker* (1959), 16 Ill. 2d 364, 372-73, an accomplice who fully disclosed to the jury his involvement in the crime for which the defendant was being tried was also permitted to testify that he had confessed to the crime. The court held that, in light of the accomplice's full factual disclosure, the further disclosure that he had confessed to the crime was not unduly prejudicial to the defendant." 72 Ill. 2d 36, 43, 377 N.E.2d 17, 20.

Additionally, in *Baker* the jury was instructed not to take into consideration the guilt or innocence of co-defendants not on trial, whereas in *Sullivan* the prosecutor urged the jury to gauge the defendant's guilt by reference to the fact that his alleged accomplice had already pleaded guilty to the same offense. In the present case, the prosecutor argued the credibility of the accomplice-witness Ramey to the jury. In light of the overwhelming evidence against the defendant, the prosecutors comments cannot be said to have contributed substantially to the defendant's conviction.

For the foregoing reasons, we affirm the judgment of the circuit court of Fulton County.

Affirmed.

BARRY and HEIPLE, JJ., concur.